**EXHIBIT A**

## SUMMONS IN A CIVIL ACTION

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBYN E. ZAVODNICK

v.

KAILASH SAYL, 7-ELEVEN, INC. and MARTUSCELLI INVESTMENT ASSOCIATES

CIVIL ACTION NO. 05-660

TO (NAME AND ADDRESS OF DEFENDANT) :

7-Eleven, Inc.

**YOU ARE HEREBY SUMMONED** and required to serve upon

Plaintiff's Attorney (Name and Address)

Robert S. Miller, Esq.
115 South 21st Street
Philadelphia, PA 19147

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service

Michael E. Kunz, Clerk of Court

Date: 02/11/2005

(By) Deputy Clerk

GREGG KELLER

Gregg Keller

APPENDIX I

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Robyn E. Zavodnick

CIVIL ACTION

v.

Kailash Sayl and
7-Elven, Inc. and Martuscelli Investment Assoc.

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. (X)

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( )

| 2/11/05 | Robert S. Miller | Plaintiff |
|---|---|---|
| Date | Attorney-at-law | Attorney for |
| 215-569-0900 | 215-569-4621 | millerr@wnwlaw.com |
| Telephone | FAX Number | E-Mail Address |

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

**APPENDIX H**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Robyn E. Zavodnick

**DEFENDANTS**
Kailash Sayl and 7-Eleven INc., and
Martuscelli Investment Assoc.

(b) County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Robert S. Miller 215-569-0900
115 S. 21st Street
Philadelphia, PA 19103

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☒ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause: Plaintiff was caused to fall due to a negligently maintained condition of defendants' premises

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD
Robert S. Miller

FOR OFFICE USE ONLY

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

JS

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBYN E. ZAVODNICK**<br>180 Yorkshire Way<br>Hatboro, PA 19040 | : | CIVIL ACTION |
| vs. | : | NO. 05cv660 |
| **KAILASH SAYL**<br>100 Four Seasons Parkway<br>Newark, DE 19702<br>and<br>**7-ELEVEN, INC.**<br>2711 North Haskell Avenue<br>Dallas, TX 75204-2906<br>and<br>**MARTUSCELLI INVESTMENT ASSOCIATES**<br>100 Four Seasons Parkway<br>Newark, DE 19702 | : | JURY TRIAL DEMANDED |

**CIVIL ACTION COMPLAINT**

1. Plaintiff, Robyn E. Zavodnick, is a citizen and resident of the Commonwealth of Pennsylvania, residing at 180 Yorkshire Way, Hatboro, PA 19040

2. Defendant, Kilash Sayl (hereinafter "Sayl"), is a citizen and resident of the State of Delaware, residing therein at 100 Four Seasons Parkway, Newark, DE 19702.

3. Defendant, 7-Eleven (hereinafter "7-Eleven"), is a corporation organized and existing under and by virtue of the laws of the State of Texas with it's principle place of business therein at 2711 North Haskell Avenue, Dallas, Texas 75204-2906.

4.     Defendant, Martuscelli Investment Associates (hereinafter "Martuscelli"), is a corporation organized and existing under and by virtue of the laws of the State of Delaware with it's principle place of business therein at 100 Four Seasons Parkway, Newark, DE 19702.

5.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) because the amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars and there is diversity of citizenship between the plaintiff and defendants.

6.     Venue in this Court is proper under 28 U.S.C. §1391 because the defendants regularly conduct business within this district.

7.     At all times material hereto, defendant, 7-Eleven, was acting by and through its agents, servants and/or employees who were then and there acting in the course and scope of their employment with and under the direct control and/or right of control of the defendant.

8.     At all times material hereto, defendant, Sayl, was acting by and through its agents, servants and/or employees who were then and there acting in the course and scope of their employment with and under the direct control and/or right of control of the defendant.

9.     At all times material hereto, defendant, Martuscelli, was acting by and through its agents, servants and/or employees who were then and there acting in the course and scope of their employment with and under the direct control and/or right of control of the defendant.

10.     At all times material hereto, defendant, 7-Eleven, owned, operated, controlled and maintained building/property/convenience store including the parking lot adjacent thereto located at 100 Four Seasons Parkway, in the State of Delaware (hereinafter referred to as "premises").

11. At all times material hereto, defendant, Sayl, owned, operated, controlled and maintained building/property/convenience store including the parking lot adjacent thereto located at 100 Four Seasons Parkway, in the State of Delaware (hereinafter referred to as "premises").

12. At all times material hereto, defendant, Martuscelli, owned, operated, controlled and maintained building/property/convenience store including the parking lot adjacent thereto located at 100 Four Seasons Parkway, in the State of Delaware (hereinafter referred to as "premises").

13. On or about December 1, 2003, at or about 7:30 a.m., plaintiff, Robyn Zavodnick, was a lawful business invitee on said premises.

14. At the time and place as aforementioned, plaintiff, Robyn Zavodnick, was walking carefully when she was suddenly and without warning caused to fall due to a negligently maintained and defective condition on/off defendants' premises, as a result of which plaintiff sustained serious, painful, permanent, personal injuries.

15. The aforesaid accident was caused by the individual, joint and/or several negligence, carelessness and/or recklessness of the defendants, their agents, servants, employees and/or representatives, and consisted inter alia, of the following:

a. Causing plaintiff, Robyn Zavodnick, to fall;

b. Failing to adequately maintain the said premises;

c. Failing to warn plaintiff;

d. Failing to take steps to provide for the safety of business invitees such as plaintiff, Robyn Zavodnick;

e. Failing to provide plaintiff with a safe and adequate passageway for business invitees such as plaintiff herein;

f. Permitting a dangerous condition to exist for an unreasonable length of time;

g. Failing to perform duties which it had assumed;

h. Failing to properly maintain parking lot on said premises;

i. Failing to use due care under the circumstances;

j. Failing to provide adequate light in said premises;

k. Permitting a dangerous condition to exist for an unreasonable period of time;

l. Failing to fill holes within parking lot;

m. Failing to retain/hire a qualified contractor to repair the dangerous condition on said premises;

n. Being guilty of willful, wanton and reckless misconduct; and

o. Being otherwise careless and negligent under the circumstances.

p. Failing to correct a dangerous condition;

q. Failing to warn plaintiff of a dangerous condition and/or defect of the said premises;

r. Failing to inspect the said premises;

16.    The accident aforementioned was caused by the negligence of the defendants herein, their respective agents, servants and/or employees, and was due in no manner whatsoever to any act or failure to act on the part of the plaintiff herein.

17.    At all times material hereto, the aforesaid premises was maintained by the defendants herein, their respective agents, servants and/or employees who were then and there acting in the course and scope of their employment with and under the direct control of the defendants.

18.    As a result of the accident aforementioned, plaintiff, Robyn Zavodnick, sustained multiple injuries, including, but not limited to, headaches, cervical strain and sprain, disc herniation at C5-6, cervical rediculopathy, tear of the distal supraspinatus tendon right shoulder, impingement syndrome bilateral shoulders, lumbar strain and sprain, thoracic sprain and sprain,, elbow strain and sprain as well as other injuries to her head, neck, back, spine, torso and extremities, their bones, cells, tissues, discs, muscles, cartilage, nerves and functions; together with shock and injury to her nerves and nervous system, some or all of which plaintiff has been advised are or may be permanent in nature.

19.    As a result of the aforesaid, plaintiff has undergone great physical pain and mental anguish. and she will continue to endure the same for an indefinite time in the future, to her great detriment and loss.

20.    As a further result of defendants negligence as aforesaid, plaintiff has become obliged to expend and/or incur large sums of money for medical attention and various purposes in an attempt to effect a cure for the aforesaid injuries, and plaintiff may be compelled to expend and/or incur additional sums for such medical attention and purposes for an indefinite time in the future.

21. As a result of this accident, plaintiff has suffered an injury which may be permanent, irreparable and severe.

22. As a further result of the defendants negligence, plaintiff was unable to attend to her daily duties and occupation, thereby suffering a loss of earnings and/or impairment of earning capacity, which plaintiff may continue to suffer for an indefinite time in the future.

23. As a further result of this accident, plaintiff has or may suffer a severe loss because of expenses which have been or may be reasonably incurred in obtaining ordinary and necessary services in lieu of those which plaintiff would have performed, not for income, but for the benefit of herself, if she had not been so grievously injured.

24. As a further result of defendants' negligence, plaintiff sustained associated incidental expenses and property damage loss.

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, in an amount in excess of Seventy-Five Thousand ($75,000.00), as well as lawful interest and costs.

A jury trial is demanded.

WAPNER, NEWMAN, WIGRIZER & BRECHER

BY: ____________________

ROBERT S. MILLER, ESQUIRE
115 South 21st Street
Philadelphia, PA 19147
(215.569.0900)

## VERIFICATION

The undersigned, having read the attached which was prepared by my attorneys, hereby verifies that the information contained therein may include information furnished to my attorneys by individuals other than myself; that the language used therein is that of my attorneys, and that to the extent the information set forth therein is not known to me, I have relied upon my attorneys in taking this Verification. Subject to the above limitations, the information contained therein is true and correct to the best of my information, knowledge and belief, subject to the penalties imposed by 18 Pa. C.S. §4904.

Case 1:05-cv-00036-SLR Document 18-2 Filed 03/28/2005 Page 12 of 36

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBYN E. ZAVODNICK | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 05-CV-660 |
| | : | |
| KAILASH SAYL and 7-ELEVEN, INC. | : | |
| and | : | JURY TRIAL DEMANDED |
| MARTUSCELLI INVESTMENT | : | |
| ASSOCIATES | : | |

**ANSWER OF DEFENDANTS KAILASH SAYL AND 7-ELEVEN, INC. TO COMPLAINT OF PLAINTIFF WITH AFFIRMATIVE DEFENSES**

Defendants Kailash Sayl and 7-Eleven, Inc., by and through their attorneys Rawle & Henderson, LLP hereby answer plaintiff's Complaint and assert affirmative defenses and cross claims as follows:

1. Defendants lack sufficient knowledge to either admit or deny the averments made herein, and, accordingly, strict proof thereof is demanded at trial.

2. Denied. Defendant Kailash Sayl is a citizen and resident of the State of Maryland.

3. Admitted.

4. Neither admitted nor denied. The averments contained in plaintiff's Complaint are directed at third party defendant, Martuscelli Investment Associates ("Martuscelli"), and therefore, no response is required. Without waiving the foregoing, answering defendants lack sufficient knowledge to either admit or deny the averments made in this paragraph, and, accordingly, strict proof thereof is demanded at trial.

5. Defendants lack sufficient knowledge to either admit or deny the averments made herein, and, accordingly, strict proof thereof is demanded at trial.

6.    Denied.  The averments contained herein constitute conclusions of law to which no response is required.  Additionally, it is specifically denied that venue is proper in the United States District Court for the Eastern District of Pennsylvania.

7.    Denied.  The averments contained herein constitute conclusions of law to which no response is required.  To the extent that a response is required, defendants deny the averments.

8.    Denied.  The averments contained herein constitute conclusions of law to which no response is required.  Additionally, defendants lack sufficient knowledge to either admit or deny the averments made herein, and, accordingly, strict proof thereof is demanded.  To the extent that a response is required, defendants deny the averments.

9.    Neither admitted nor denied.  The averments contained in plaintiff's Complaint are directed at third party defendant, Martuscelli, and therefore, no response is required.  Without waiving the foregoing, answering defendants lack sufficient knowledge to either admit or deny the averments made in plaintiff's Complaint, and, accordingly, strict proof thereof is demanded at trial.

10.    Denied.  Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state conclusions of law which are deemed denied.  By way of further answer, but not in derogation of the foregoing, it is denied that defendant 7-Eleven, Inc. owned, operated, controlled and maintained the building/property/convenience store including the parking lot adjacent thereto located at 100 Four Seasons Parkway, in the State of Delaware.

11.    Denied.  Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state conclusions of law which are deemed denied.  By way

of further answer, but not in derogation of the foregoing, it is denied that defendant Sayl owned, operated, controlled and maintained the parking lot adjacent to a convenient store located at 100 Four Seasons Parkway, in the State of Delaware. By way of further answer, but not in derogation of the foregoing, it is admitted that defendant Sayl was a franchisee of a convenience store located at 100 Four Seasons Parkway, in the State of Delaware, and was responsible for maintaining the interior of the store in accordance with the franchise agreement.

12.     Neither admitted nor denied. The averments contained in plaintiff's Complaint are directed at third party defendant, Martuscelli, and therefore, no response is required. Without waiving the foregoing, answering defendants lack sufficient knowledge to either admit or deny the averments made in plaintiff's Complaint, and, accordingly, strict proof thereof is demanded at trial.

13.     Denied. Defendants lack sufficient knowledge to either admit or deny the averments made herein, and, accordingly, strict proof thereof is demanded at trial.

14.     Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state conclusions of law which are deemed denied. Additionally, defendants lack sufficient knowledge to either admit or deny the averments made herein, and, accordingly, strict proof thereof is demanded at trial.

15.     (a) through (r), inclusive. Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state conclusions of law which are deemed denied.

16.     Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state conclusions of law which are deemed denied.

17.     Denied. Under the Federal Rules of Civil Procedure, no answer is required to this

paragraph as the averments therein state conclusions of law which are deemed denied. By way of further answer, but not in derogation of the foregoing, answering defendants deny that the premises in question were maintained by answering defendants or their respective agents, servants and/or employees who were then and there acting in the course and scope of their employment with and under the direct control of the answering defendants at any time material hereto.

18.     Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state, in part, conclusions of law which are deemed denied. Additionally, answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph and they are, accordingly, denied and strict proof thereof is demanded. By way of further answer, but not in derogation of the foregoing, answering defendants deny that the any act or omission to act on their part caused plaintiff's alleged injuries and/or alleged damages.

19.     Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state, in part, conclusions of law which are deemed denied. Additionally, answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph and they are, accordingly, denied and strict proof thereof is demanded. By way of further answer, but not in derogation of the foregoing, answering defendants deny that the any act or omission to act on their part caused plaintiff's alleged injuries and/or alleged damages.

20.     Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state, in part, conclusions of law which are deemed denied. Additionally, answering defendants are without knowledge or information sufficient to form a

belief as to the truth of the remaining averments in this paragraph and they are, accordingly, denied and strict proof thereof is demanded. By way of further answer, but not in derogation of the foregoing, answering defendants deny that the any act or omission to act on their part caused plaintiff's alleged injuries and/or alleged damages. By way of further answer, but not in derogation of the foregoing, answering defendants deny that they were negligent in any respect.

21. Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state, in part, conclusions of law which are deemed denied. Additionally, answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph and they are, accordingly, denied and strict proof thereof is demanded. By way of further answer, but not in derogation of the foregoing, answering defendants deny that the any act or omission to act on their part caused plaintiff's alleged injuries and/or alleged damages.

22. Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state, in part, conclusions of law which are deemed denied. Additionally, answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph and they are, accordingly, denied and strict proof thereof is demanded. By way of further answer, but not in derogation of the foregoing, answering defendants deny that the any act or omission to act on their part caused plaintiff's alleged injuries and/or alleged damages. By way of further answer, but not in derogation of the foregoing, answering defendants deny that they were negligent in any respect.

23. Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state, in part, conclusions of law which are deemed denied. Additionally, answering defendants are without knowledge or information sufficient to form a

belief as to the truth of the remaining averments in this paragraph and they are, accordingly, denied and strict proof thereof is demanded. By way of further answer, but not in derogation of the foregoing, answering defendants deny that the any act or omission to act on their part caused plaintiff's alleged injuries and/or alleged damages.

24. Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state, in part, conclusions of law which are deemed denied. Additionally, answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph and they are, accordingly, denied and strict proof thereof is demanded. By way of further answer, but not in derogation of the foregoing, answering defendants deny that the any act or omission to act on their part caused plaintiff's alleged injuries and/or alleged damages. By way of further answer, but not in derogation of the foregoing, answering defendants deny that they were negligent in any respect.

WHEREFORE, Defendants 7-Eleven, Inc. and Kailash Sayl respectfully request that judgment be entered in its favor and against Plaintiff Robyn Zavodnick on all claims, and costs and attorney's fees be awarded in favor of Defendants.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

25. Plaintiff has filed this action in the improper venue.

### SECOND DEFENSE

26. If plaintiff was injured as she alleges, said injuries were not due to the acts and/or omissions of answering defendants.

### THIRD DEFENSE

27. Answering defendants owed no duty to plaintiff.

### FOURTH DEFENSE

28. Plaintiff assumed the risk of injury and therefore her claims should be denied.

WHEREFORE, Defendants 7-Eleven, Inc. and Kailash Sayl respectfully request that judgment be entered in their favor and against Plaintiff Robyn Zavodnick on all claims, and costs and attorney's fees be awarded in favor of Defendants.

## NEW MATTER CROSSCLAIM PURSUANT TO F.R.C.P. 13 DIRECTED TO DEFENDANT MARTUSCELLI INVESTMENT ASSOCIATES

29. Answering defendants 7-Eleven and Sayl, while denying any and all allegations in plaintiff's Complaint, nevertheless assert that if they are found liable to plaintiff, answering defendants' negligence or other liability-producing conduct, if any, was passive, secondary and unrelated and that the negligence or other liability-producing conduct of defendant Martuscelli Investment Associates was active, primary and proximate.

30. Answering defendants deny that they are liable to plaintiff for any sum or sums whatsoever; however, if such liability should be found at the time of trial and all such liability

Case 1:05-cv-00069-JJF Document 18-2 Filed 08/31/2005 Page 20 of 36

hereby is again specifically denied, then, as alleged in plaintiff's Complaint and according to the facts set forth therein, defendant Martuscelli Investment Associates is alone liable to plaintiffs, jointly and/or severally liable with answering defendants 7-Eleven and Sayl and/or liable over to answering defendants 7-Eleven and Sayl under the principals of contribution and/or indemnity for any sum or sums adjudged due to plaintiff, or paid to plaintiff, by answering defendants by way of judgment, verdict or settlement, including an award of costs and fees.

31. Answering defendants deny that they are liable to plaintiff for any sum or sums whatsoever; however, if such liability should be found at the time of trial and all such liability hereby is again specifically denied, then, as alleged in plaintiff's Complaint and according to the facts set forth therein, defendant Martuscelli Investment Associates is alone liable to plaintiffs, jointly and/or severally liable with answering defendants 7-Eleven and Sayl and/or liable over to answering defendants 7-Eleven and Sayl as this incident allegedly took place in the parking lot of the 7-Eleven store. The lease agreement between 7-Eleven, Sayl and Martuscelli states that "Lessor agrees to maintain in good repair the outside walls, roof and floor of the building and surface of the parking areas, sidewalks and driveways..." See Paragraph 9, page 2 of the Lease Agreement, a true and correct copy of which is attached hereto as Exhibit "A."

WHEREFORE, defendants 7-Eleven, Inc. and Kailash Sayl deny liability to any party in any sum or sums and demand that judgment be entered in their favor together with attorneys' fees and costs.

**RAWLE & HENDERSON LLP**

By: /s/ Thomas P. Wagner
Thomas P. Wagner, Esquire
Identification No. 27145
Matthew J. McLees, Esquire
Identification No. 71592
Attorneys for Defendants
7-Eleven, Inc. and
Kailash Sayl

The Widener Building
One South Penn Square
Philadelphia, PA 19107
(215)575-4200

Date:______________

**CERTIFICATE OF SERVICE**

I do hereby certify that a true and correct copy of the foregoing Answer to Plaintiff's Complaint was sent by First Class mail, postage prepaid, to the following counsel of record:

Robert S. Miller, Esquire
Wapner, Newman, Wigrizer & Brecher
115 South 21st Street
Philadelphia, PA 19147

RAWLE & HENDERSON LLP

By: /s/ Thomas P. Wagner
Thomas P. Wagner, Esquire
Matthew J. McLees, Esquire
Attorneys for Defendants,
Kailash Sayl and 7-Eleven, Inc.

Dated:

REC C198 PAGE 274

MEMORANDUM OF LEASE

2874

This is a Memorandum of Lease between W.S.H. Investments ("Lessor"), of 2502 Silverside Road, Suite 8, Wilmington, DE 19803 and THE SOUTHLAND CORPORATION ("Lessee"), of 2828 North Haskell Avenue, Dallas, Texas, the terms of which are as follows:

| | |
|---|---|
| Date of Lease: | Oct. 14, 1976 |
| Description of leased premises: | See Exhibit A attached hereto. (Xerox copy of legal description from lease) |
| Date of commencement: | The first day of the first calendar month following (1) 15 days after the acceptance by LESSEE'S architect of the building and other improvements to be constructed on the demised premises, or (2) the date that LESSEE or its assigns shall first be open for business to the public, whichever event first occurs. |
| Term: | 20 Years. |
| Renewal option: | Lessee has 3 successive options to extend for a period of 5 years each. Options must be exercised at least 60 days prior to expiration of term or extended term. |
| Purchase option (s): | Lessee has first refusal option to purchase during entire term and extensions; ~~and option to purchase at stated price at end of term.~~ |

The purpose of this Memorandum of Lease is to give record notice of the lease and of the rights created thereby, all of which are hereby confirmed.

In witness whereof, the parties have executed this Memorandum of Lease as of the dates set forth in their respective acknowledgments.

(SEAL)

Attest: [signature]
~~Assistant Secretary~~

LESSOR:

By [signature: Carl G. Wittig]

(SEAL)

Attest: [signature]
Assistant Secretary

THE SOUTHLAND CORPORATION

By [signature]
Vice President

form 4400010 (RE-34)

Feb 25 2005 12:44

FEB-25-2005 12:00 7-ELEVEN, INC. 214 828 7631 P.04/16

STATE OF [illegible] } SS

COUNTY OF NEW CASTLE

On August 20th 1976 before me, the undersigned, a Notary Public in and for said State, personally appeared CARL G. WITTE

[illegible] known to me to be the person whose name IS subscribed to the within instrument and acknowledged that HE executed the same.

WITNESS my hand and official seal.

Signature Letha K. Scanlon

LETHA K. SCANLON

Name (Typed or Printed)

(This area for official notarial seal)

TI

TO 449 C
(Corporation)

STATE OF } SS.

COUNTY OF

On ______ before me, the undersigned, a Notary Public in and for said State, personally appeared ______ known to me to be the ______ President, and ______ known to me to be ______ Secretary of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature ______

Name (Typed or Printed)

(This area for official notarial seal)

TI

TO 449 C
(Corporation)

STATE OF Texas } SS.

COUNTY OF Dallas

On Oct. 14, 1976 before me, the undersigned, a Notary Public in and for said State, personally appeared J. Richard Dole and Perry Hawkins known to me to be the Vice President and known to me to be Asst. Secretary of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature Debbie McAllister

Name (Typed or Printed)

(This area for official notarial seal)

DEBBIE McALLISTER, Notary Public
in and for Dallas County, Texas
My Commission Expires June 1, 1977

GSCL
#18404

# LEASE AGREEMENT

1. PARTIES. THIS LEASE AGREEMENT is between W.S.H. Investments herein referred to as LESSOR, and THE SOUTHLAND CORPORATION, a Texas Corporation, herein referred to as LESSEE.

2. PREMISES. LESSOR hereby leases to LESSEE and LESSEE leases from LESSOR, for the term and upon the terms and conditions hereinafter set forth, the premises described in Schedule A and shown on the plot plan which is Schedule B, both of which schedules are attached hereto and made a part hereof, together with the building and other improvements to be constructed thereon as hereinafter provided, and together with the right to use all adjoining parking areas, driveways, sidewalks, roads, alleys and means of ingress and egress in the shopping center of which the leased premises are a part, insofar as LESSOR has the power to lease or license the use thereof. (If Schedule B conflicts with the revised plot plan as hereinafter provided, the revised plot plan shall control.)

3. CONSTRUCTION. LESSOR agrees at LESSOR'S expense to construct on the leased premises a building and other improvements in accordance with plans and specifications approved by LESSEE. LESSOR acknowledges receipt of Set No. 75F 60 x 40 *Mansard of LESSEE'S standard plans and Set No. 75F 60 x 40 *Mansard of LESSEE'S standard specifications. The parties agree promptly to obtain an architect's plot plan and, if revision of LESSEE'S standard plans and specifications is necessary, to obtain revised plans and specifications, the plot plan and any revision of the plans and specifications to be approved by LESSEE and the cost thereof to be paid by LESSOR. LESSEE'S approval shall be evidenced by the signature of LESSEE'S authorized representative on the plot plan and on the top sheet of one set of plans and specifications. LESSOR agrees on or before March 31, 19 77 to complete construction of the building and other improvements in strict accordance with the plot plan and plans and specifications as approved by LESSEE. If without the prior written consent of LESSEE to extend the time for construction, which consent LESSEE shall not unreasonably withhold, LESSOR shall fail to complete the construction on or before the agreed date, LESSEE may enforce specific performance of LESSOR'S covenants and agreements or may pursue any other available legal or equitable remedy. If LESSOR for any reason whatever shall fail to complete the construction before June 30, 19 77, LESSEE shall have the option to terminate this lease. See Addendum #31

4. TERM. The primary term of this lease shall commence on the first day of the first calendar month following (1) 15 days after the acceptance by LESSEE'S architect of the building and other improvements to be constructed on the demised premises, or (2) the date that LESSEE or its assigns shall first be open for business to the public, whichever event first occurs; and shall continue for a period of 20 years thereafter, unless sooner terminated or extended as hereinafter provided. Should such event occur on other than the first day of a calendar month, LESSEE agrees to pay a proportionate part of the monthly rental herein provided for that month only. LESSEE shall have and is hereby granted a total of 3 successive options to extend the term of this lease for ~~any period of time not exceeding~~ 5 years for each such option upon the same covenants and conditions as herein provided. If LESSEE shall elect to exercise one or more of such options it shall do so by giving LESSOR written notice at least 90 days prior to the expiration of the primary term or of the then current extension, and in such notice LESSEE shall state the date to which it elects to extend the term.

5. RENT. LESSEE agrees to pay to LESSOR or his designee a minimum rental of Twelve Hundred and Fifty Dollars ($1250.00) per month for each and every month during the terms of this lease, such monthly rental to be paid in advance on or before the fifth day of each month (unless such rental shall be abated or diminished as provided hereinafter.) Not later than 60 days after the end of each calendar year, LESSEE shall furnish LESSOR a statement showing the gross sales (computed as hereinafter provided) made in the store on the leased premises during such calendar year. At the time such statement is furnished LESSEE agrees to pay to LESSOR, as additional rent due hereunder, an amount of money equal to Two per cent (2 %) of such sales, less the total of the monthly rentals paid during the preceding calendar year. In computing sales for the purposes of this provision, LESSEE shall take the total amount of all sales of every kind made in the store on the leased premises and deduct therefrom the following to the extent that same are included in such total amount: (1) refunds made to customers, (2) sales, excise and gross receipts taxes, and (3) proceeds from the sale of money orders (fees received for issuance of money orders shall not be deducted). Such rental payments may be paid by check and sent to LESSOR by ordinary first class mail. See Addendum #32

6. USE. The premises may be used for the retail sale of merchandise customarily sold at stores operated by or under franchise from LESSEE or at grocery stores of the type commonly called supermarkets, including but not limited to groceries, produce, meat, dairy products, beer, wine and alcoholic beverages gasoline and petroleum products, and sundries. With the written consent of LESSOR, which consent shall not be unreasonably withheld, the premises may be used for any other lawful purpose not in conflict with any provision contained in leases covering other buildings leased by LESSOR in the shopping center of which the LESSEE has actual knowledge. ~~LESSOR agrees promptly to apply for an "offsale" beer and wine license for the premises. If LESSEE finds that such a license is not obtainable, LESSEE may terminate this lease at any time within forty days after the date of execution of this lease, but if LESSEE fails to terminate this lease within such period, thereafter LESSEE shall not have any right to terminate this lease because such a license is not obtained. If LESSEE terminates this lease under this provision, LESSEE agrees to reimburse LESSOR for all reasonable expenses actually incurred by LESSOR for the preparation of the plot and plans and specifications prior to such termination.~~

7. UTILITIES. LESSEE agrees to pay all charges for gas, electricity and water used by it.

8. TAXES. ~~LESSEE agrees to pay all taxes levied upon personal property, including trade fixtures and~~

Feb 25 2005 12:45 214 828 7631 P.06/16

FEB-25-2005 12:00 7-ELEVEN, INC.

~~inventory not owned by LESSOR and kept on the leased premises. LESSOR agrees to pay all taxes and as-sessments levied against the land and the building and improvements, other than trade fixtures of LESSEE situated thereon.~~ See Addendum #33

INITIALS

**9. MAINTENANCE.** LESSOR agrees to maintain in good repair the outside walls, roof and floor of the building and surface of the parking areas, sidewalks and driveways, as well as the structural soundness of the building, and all underground gas, water and sewer pipes except those parts of such pipes as are in or di-rectly beneath the floor of the building. LESSEE agrees to keep the inside of the building in good repair, in-cluding the plumbing, electrical wiring, air conditioning and heating equipment, and those parts of under-ground gas, water and sewer pipes as are contained in or are directly beneath the floor of the building, and to paint the exterior walls and be responsible for all glass, casualty damage and reasonable wear and tear ex-cepted.

**10. ALTERATIONS.** LESSEE shall not make any alterations involving structural changes without se-curing LESSOR'S written consent. Other alterations or additions, such as to store front, marquee and non-weight bearing partitions, may be made by LESSEE in a good workmanlike manner without cost to LESSOR.

**11. TRADE AND OTHER FIXTURES.** LESSEE may install or cause to be installed such equipment and trade and other fixtures as are reasonably necessary for the operation of its business. Such equipment and trade and other fixtures may be installed prior to acceptance of the improvements and shall remain person-al property, and title thereto shall continue in the owner thereof, regardless of the manner in which same may be attached or affixed to the demised premises. In the event such equipment and trade or other fix-tures are subject to a lien or title retention instrument, the holder of such lien or title retention instru-ment shall have the right and be able to enforce the same as stated therein.

**12. CASUALTY DAMAGE.** ~~If, in the opinion of LESSEE, the leased premises are rendered substantially unfit for the occupancy or use herein contemplated by any casualty or peril insured against in a standard fire and extended coverage insurance policy of the type then commonly purchased by owners of small com-mercial buildings in the area in which the leased premises are situated (such a casualty or peril being here-inafter referred to as an insurable casualty or peril) and the primary term or the then current extension of the term shall have at least two years to run, LESSOR at LESSOR'S expense shall promptly and diligently restore the leased premises to the condition existing prior to the occurrence of the insurable casualty or peril, and all rental shall abate from the date of such occurrence until the leased premises are so restored. If, in the opinion of LESSEE, the leased premises are rendered substantially unfit for the occupancy or use herein con-templated by any casualty or peril other than an insurable casualty or peril, or by any casualty or peril what-ever when the primary term or the then current extension of the term shall have less than two years to run, LESSOR may either restore the leased premises at LESSOR'S expense as above provided or LESSOR may terminate this lease effective as of the date of the occurrence of the casualty or peril; provided, that LES-SOR shall not have the right to so terminate this lease if the casualty or peril is an insurable casualty or peril and within 10 days after the occurrence of the casualty or peril LESSEE exercises any option to extend the term of this lease for a period of at least two years, or if the casualty or peril is other than an insurable casualty or peril and LESSEE within 10 days after the occurrence of the casualty or peril shall agree in writing to restore the leased premises at LESSEE'S expense. If, in the opinion of LESSEE, the leased prem-ises are not thereby rendered substantially unfit for the occupancy or use herein contemplated, LESSOR shall promptly and diligently restore the leased premises at LESSOR'S expense to the condition existing prior to the occurrence of the casualty or peril and the rental shall not abate because of such damage. On written request of LESSEE, LESSOR shall furnish to LESSEE the name and address of its casualty insurance car-rier.~~ See Addendum #34

**13. LIABILITY INSURANCE.** LESSEE agrees at LESSEE'S expense to maintain in force continuously throughout the term of this lease and any extension hereof public liability insurance covering the leased prem-ises, with limits of $100,000.00 for death or injury to one person, $300,000.00 for death or injury to more than one person, and $25,000.00 for property damage, and shall upon written request of LESSOR furnish LESSOR a certificate by the insurer that such insurance is in force.

**14. COMPLIANCE WITH LAWS.** LESSEE will promptly comply with all applicable and valid laws, ordinances and regulations of Federal, State, County, Municipal or other lawful authority pertaining to the use and occupancy of the leased premises.

**15. ASSIGNMENT AND SUBLETTING.** LESSEE shall have the right to assign or sublease the whole or any part of the demised premises, provided that any assignment or sublease shall be subject to all of the terms and conditions of this lease and that LESSEE shall remain primarily liable for the payment of the rent and the performance of the terms and conditions of this lease.

**16. BANKRUPTCY.** Should LESSEE make an assignment for benefit of creditors, or be adjudicated bankrupt, such action shall constitute a breach of this lease for which LESSOR, at its opinion, may ter-minate all rights of LESSEE or its successors in interest under this lease.

**17. EMINENT DOMAIN.** If all of the leased premises and common areas is taken under the power of eminent domain or conveyed under threat of condemnation proceedings, or if only a part of such pre-mises or common areas is so taken or conveyed and LESSEE shall determine that the remainder is inadequate or unsatisfactory for its purposes, which determination shall not be arbitrarily or capriciously made, then, in either event, this lease shall terminate effective as of the date LESSEE is required to give up the right to occupy or use any part of the leased premises or common areas. The termination of this lease as above provided shall not operate to deprive LESSEE of the right to make claim against the condemning authority for any damages suffered by LESSEE, but LESSEE shall have no right to make any claim against LES-SOR because of such termination. If this lease is not terminated as above provided, LESSOR and LESSEE shall agree upon an equitable reduction of the rental. If the parties fail to agree upon such reduction within 60 days from the date of the final award or payment for the part of the leased premises so taken or conveyed, LESSOR and LESSEE shall each choose one arbitrator and the two arbitrators so chosen shall choose a third arbitrator. The decision of any two of the arbitrators as to the rental reduction, if any, shall be binding

on LESSEE and LESSOR and any expense of the arbitration shall be divided equally between LESSEE and LESSOR.

**18. ATTORNEYS' FEES.** If suit is brought to enforce any covenant of this lease or for the breach of any covenant or condition herein contained, the parties hereto agree that the losing party shall pay to the prevailing party a reasonable attorneys' fee, which shall be fixed by the court, and court costs.

**19. DEFAULT.** In the event LESSEE shall default in the payment of the monthly rent as provided herein, LESSOR shall promptly so notify LESSEE in writing, and failure of LESSEE to cure such default within twenty days after receipt of such notice shall, at the option of the LESSOR, work as a forfeiture of this lease, or LESSOR may enforce performance in any manner provided by law, and LESSOR'S agent or attorney shall have the right without further notice or demand to re-enter and remove all persons from LESSOR'S property without being deemed guilty of any manner of trespass and without prejudice to any remedies for arrears of rent or breach of covenant, or LESSOR'S agent or attorney may resume possession of the property and relet the same for the remainder of the term at the best rental such agent or attorney can obtain for the account of LESSEE, who shall pay any deficiency, and LESSOR shall have a lien as security for such rental upon the fixtures and equipment belonging to LESSEE which are the demised premises. In the event LESSEE shall default in the performance of any of the terms or provisions of this lease other than the payment of monthly rent, LESSOR shall promptly so notify LESSEE in writing. If LESSEE shall fail to cure such default within twenty days after receipt of such notice, or if the default is of such character as to require more than twenty days to cure and LESSEE shall fail to commence to do so within twenty days after receipt of such notice and thereafter diligently proceed to cure such default, then in either such event LESSOR may cure such default and such expense shall be added to the rent otherwise due, but any such default shall not work as a forfeiture of this lease.

In the event LESSOR shall default in the performance of any of the terms or provisions of this lease (other than Art. 4 dealing with construction of improvements which contains special terms for notice and correction of defaults). LESSEE shall promptly so notify LESSOR in writing. If LESSOR shall fail to cure such default within twenty days after receipt of such notice, or if the default is of such character as to require more than twenty days to cure and LESSOR shall fail to commence to do so within twenty days after receipt of such notice and thereafter diligently proceed to cure such default, then, in either event, LESSEE may cure such default and such expense shall be deducted from the rent otherwise due or cancel and terminate this lease.

**20. RIGHT OF FIRST REFUSAL.** If during the term of this lease, or any extension thereof, LESSOR shall receive a bona fide offer to purchase the demised premises, which offer is acceptable to LESSOR, LESSOR agrees that LESSEE shall have and is hereby granted an option to purchase the demised premises upon the same terms and provisions. LESSOR agrees immediately after receipt of such offer to give LESSEE notice in writing of the terms and provisions thereof, and that LESSEE may exercise its option to purchase said property at any time within twenty days after such notice is received by LESSEE. If LESSEE shall elect to exercise such option it shall do so by giving notice in writing to LESSOR within such twenty-day period and a contract of sale shall be executed by the parties and title closed within a reasonable time thereafter. The failure of LESSEE to exercise the option provided in this article shall in no way relieve or release LESSOR from the terms and effect of the option granted in Article 21.

**21. OPTION TO PURCHASE.** ~~LESSOR agrees that LESSEE shall have and is hereby granted an option to purchase the leased premises at the expiration of the term of this lease, or any extension thereof for ________________ Dollars ($________). LESSEE may exercise this option to purchase at any time within twenty days prior to the date of expiration by giving written notice to LESSOR and a contract of sale shall be executed by the parties and title closed within a reasonable time thereafter. Should such reasonable time extend beyond said expiration, this lease and all of its terms and conditions shall automatically be extended until closing. Rent is to be apportioned to date of closing.~~

[Handwritten in margin: Void [illegible] initials]

**22. COMMON AREAS.** LESSOR shall be responsible for cleaning and lighting the parking and other common areas of the shopping center designated on Schedule B, but LESSEE shall bear a part of the cost of such cleaning and lighting in proportion to the number of square feet of floor space of the building leased by LESSEE as compared with the total number of square feet of floor space of all the buildings in the shopping center. That part of the common areas which primarily serves the customers of the building leased by LESSEE shall be lighted at night during LESSEE'S business hours. Upon the written request of LESSEE, LESSOR shall award a contract for cleaning the common areas to the lowest of three bidders, one of whom may be LESSEE. Lessee's maximum cost shall not exceed $25.00 per month.

**23. CO-TENANCY.** LESSOR agrees that no building in the shopping center shall be occupied by a business selling food or alcoholic beverages ~~for consumption on the premises~~ without the prior written consent of LESSEE. Also included are pizza outlets, sandwich shops, beauty shops, and barber shops. [Typed insertion: Excepting one liquor store & one tavern selling prepared food] [Handwritten insertion: in this location]

[Handwritten in margin: initials]

**24. EXCLUSIVE.** LESSOR agrees that no occupant of any building in the shopping center other than the herein leased building shall be allowed to sell packaged fluid milk, packaged bread products, or delicatessen type food products for consumption off the premises, except a grocery store occupying a building containing more than 10,000 square feet of floor space.

**25. LESSOR'S COVENANTS.** LESSOR covenants that he has good and marketable title to the demised premises in fee simple absolute and that the same is subject to no leases, tenancies, agreements, encumbrances, liens, restrictions or defects in title affecting the demised premises or the rights granted LESSEE in this lease; that there are no restrictive covenants, zoning or other ordinances or regulations applicable to the demised premises which will prevent LESSEE from conducting its usual business; and that, in the event the demised premises are in an area where the sale of beer for off-premises consumption is permitted by law, there are no restrictive covenants applicable to the demised premises which will prevent LESSEE from selling beer for off-premises consumption.

**26. QUIET ENJOYMENT.** LESSEE upon paying the rent and performing the covenants and

agreements of this lease shall quietly have, hold and enjoy the demised premises and all rights granted LESSEE in this lease during the term thereof and extensions thereto, if any.

27. **SUBORDINATION.** LESSEE hereby agrees that its leasehold interest hereunder is subordinate to any mortgages now on, or hereafter to be placed on, the premises leased hereunder; provided, as a condition precedent to such subordination, each such mortgagee shall expressly covenant or each such mortgage shall expressly provide that so long as the LESSEE is not in default under said Lease Agreement, the LESSEE'S quiet possession of the portion of the premises leased hereunder shall remain undisturbed, on the terms and conditions stated herein, whether or not the mortgage is in default and notwithstanding any foreclosure or other action brought by the holder of the mortgage in connection therewith.

This Subordination Agreement shall be self operative and no further instrument or certificate of subordination shall be required from LESSEE.

28. **NOTICES.** Any notices required or permitted hereunder shall be in writing and delivered either in person to the other party or the other party's authorized agent, or by United States Certified Mail, Return Receipt Requested, postage fully prepaid, to the addresses set forth hereinafter, or to such other address as either party may designate in writing and deliver as herein provided.

LESSOR: W.S.H. Investments
2502 Silverside Road, Suite 8
Wilmington, DE 19803

LESSEE: THE SOUTHLAND CORPORATION
Attn: Director of Property
2828 North Haskell Avenue
Dallas, Texas 75204

29. **RECORDING.** This lease agreement shall not be filed for public record by any party hereto, but when the construction of the building and other improvements is completed as herein provided LESSOR and LESSEE shall execute and acknowledge a memorandum or short form lease setting forth the parties, description of the leased premises, term of the lease, options for extension of the term, if any, and any other provision hereof, the inclusion of which shall be mutually agreed upon by LESSOR and LESSEE, which memorandum or short form lease may be filed for public record by any party hereto. However, at the option of either party, a short form or memorandum of lease may be filed by either party at any time after the execution of this lease agreement.

30. **COMPLETE AGREEMENT.** This lease contains a complete expression of the agreement between the parties and there are no promises, representations or inducements except such as are herein provided.

Added Addendum containing Articles 31 through 34 is hereby incorporated into and made a part of this lease.

This lease agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

EXECUTED BY LESSOR this 20th day of August, 1976

LESSOR Carl G. Wittig (Seal)

EXECUTED BY LESSEE this 14th day of Oct, 1976

THE SOUTHLAND CORPORATION

ATTEST: [signature]
Assistant Secretary

[signature]
Vice President

referred to as ... and THE SOUTHLAND CORPORATION, referred to as LESSEE.

31. CONSTRUCTION. Lessor agrees to construct a 20' x 60' reinforced concrete parking apron directly in front of the proposed store regardless of whether or not said parking apron is shown on plans furnished by Lessee.

31. See Attachment

32. COMMODITY PRICE INDEX RENTAL ADJUSTMENT. The minimum rent provided herein shall be adjusted at the end of the primary term of the lease or any extension thereof by applying the following formula: If the average of the monthly Wholesale Commodity Price Index prepared by the Department of Labor of the United States for the three months prior to the commencement of each option, or extension period should be greater or less than the average of the monthly Wholesale Price Index for the three months prior to the commencement of this lease, then the said monthly rental for the next ensuing option or extension shall be the sum of the minimum monthly rental provided herein for the primary term multiplied by a fraction of which the numerator shall be such average of the monthly Wholesale Commodity Price Index for the three months prior to the commencement of that particular option or extension period and the denominator shall be the average of the monthly Wholesale Commodity Price Index for the three months prior to the commencement of this lease. If at the expiration of the original term of this lease said index be no longer compiled, then another index generally recognized as authoritative shall be substituted by agreement, but if the parties do not agree, the substitute index shall be selected by the majority determination of three arbitrators appointed for the purpose, one being appointed by Lessor, one by Lessee, and a third by the two arbitrators appointed by Lessor and Lessee.

33. TAXES. LESSEE hereby agrees to reimburse LESSOR for 100 % of the amount of real estate taxes levied against that portion of the shopping center leased by LESSEE. If separate assessments are not made on each unit of the shopping center, the amount of taxes for which LESSEE is liable under this agreement shall be a percentage of the total amount of taxes levied against said shopping center. This percentage shall be determined by dividing the amount of square feet leased under this agreement by the total amount of square feet in the said center. However, if LESSEE shall determine that in his appraisal the assessor (s) used a lower price per square foot on the portion of the building occupied by LESSEE than on the balance of the building and/or that the land occupied by LESSEE is appraised on a basis lower than that used for the balance of the land on which the shopping center is located, LESSEE may show evidence of said lower appraisal to LESSOR and use said lower appraisal times the percentage of assessment and the current tax rate as a basis for reimbursement to LESSOR. LESSOR further agrees that LESSEE is liable for only his determinable percentage of the lowest discounted amount and LESSEE will not be required to pay any penalty, interest or other costs accruing by reason of the LESSOR'S failure to pay said taxes when due. LESSOR further agrees to make presentation of said tax receipt (s) to LESSEE within six months after payment by LESSOR to the taxing jurisdiction (s) or forfeit all rights to recover said taxes for that particular tax year. Any amounts paid by LESSEE as real property taxes on the demised premises shall be deducted from any percentage rental otherwise due hereunder.

34. CASUALTY DAMAGE. Article 12 of this lease is hereby deleted and this clause is substituted in its place. If, in the opinion of LESSEE, the leased premises are rendered substantially unfit for the occupancy or use herein contemplated by any casualty or peril insured against in a standard fire and extended coverage insurance policy of the type then commonly purchased by LESSEE (such a casualty or peril being hereinafter referred to as an insurable casualty or peril) and the primary term or the then current extension of the term shall have at least two years to run, LESSEE at its option may promptly and diligently restore the leased premises to the condition existing prior to the occurrence of the insurable casualty or peril or may release and turn over to LESSOR the insurance proceeds as a result thereof and cancel and terminate this lease. If, in the opinion of LESSEE, the leased premises are rendered substantially unfit for the occupancy or use herein contemplated by any casualty or peril other than an insurable casualty or peril or by any casualty or peril whatever when the primary term or the then current extension of the term shall have less than two years to run, LESSEE may either restore the leased premises at its expense as above provided or LESSEE may release and turn over to LESSOR the insurance proceeds as a result thereof and terminate this lease effective as of the date of occurrence of the casualty or peril. If, in the opinion of LESSEE, the leased premises are not thereby rendered substantially unfit for the occupancy or use herein contemplated, LESSEE shall promptly and diligently restore the leased premises at LESSEE'S expense to the condition existing prior to the occurrence of the casualty or peril. Since LESSEE has agreed to restore the demised premises in the event of casualty damage and since LESSEE has numerous other properties as to which it is self-insured, LESSEE may be a self-insurer as to the demised premises; provided, that on the written request of LESSOR, LESSEE shall procure and maintain fire and extended coverage insurance on the building of the type then commonly purchased by LESSEE, to at least 80% of its insurable value and naming LESSOR as an additional assured.

ADDENDUM 31-A

[illegible]

[illegible] agreed [illegible] Lessee's [illegible] improvements [illegible] contractors approved by Lessee [illegible] the [illegible] is more or less that [illegible], the monthly [illegible] rental herein shall be increased or decreased [illegible] one percent [illegible] or, at [illegible] the Lessee may pay any [illegible] after completion of the improvements in lieu of adjusting the minimum monthly rent. If the lowest of such bids exceeds [illegible], Lessee may, at its option, cancel this lease within [illegible] days after receiving written notification of such bid.

The [illegible] to be included in such bids are as follows:

a. Construction cost of the building from the "[illegible]" complete with electrical service, plumbing and sanitary mains to be stubbed out 5' from the building perimeter all as shown on Lessee's typical drawings and specifications described in paragraph 3 of this lease.

b. Additional cost to extend and connect sewers, water, gas, and electrical mains from item a. to service locations not to exceed 35' from the leased property lines. (Not including city front-footage connection fees in excess of $1.00 per front foot or liens against the property for city-installed mains, should either exist.)

c. Cost of grading and paving parking lot within Lessee's leased area and to Lessee's specifications adequate to insure normal drainage from site.

d. Construction of concrete apron as described in Paragraph 31.

INITIALS

PROPERTY [illegible]

Attached to and made a part [illegible] *Oct. 14, 1976* [illegible]
between W C H Investments, [illegible]
Southland Corporation, [illegible]

Leased premises are a part of the below described property and further depicted on attached Schedule B:

Said property beginning at a point on the Southwesterly side of Delaware Route 896, said point being a common corner for lands herein being described and the entrance road to the Four Seasons development; thence from said point of beginning along said Delaware Route 896, S2 17 44 W 148.389' to a point; thence proceeding N 85 23 30 W 274.999' to a point thence proceeding N 2 17 44 E 137.289' to a point; thence proceeding S 87 42 16 E 274.789' to the point of beginning.

Said lessee's property is shown and further described on plot plan drawing #2, dated 8/2/76, attached hereto and entitled Schedule B, as Proposed Retail Store, 2400 square feet, #I ^ and is outlined in red. Common use areas are outlined in green.

exclusive right to use the 5 parking spaces immediately North of said store, all as

INITIALS

SCHEDULE A

AMENDMENT NO. one (1)
STORE NO. 1126-18494

On the 14th day of October, 1976, W.S.H. Investments 2502 Silverside Rd., Suite 8, Wilmington, Delaware 19803 as LESSOR, and The Southland Corporation as LESSEE, entered into a lease agreement covering the premises commonly known as Store #1, 4 Seasons Center, Rt. 896, New Castle County, Dela. and more fully described in Schedule A, which Schedule is attached hereto and made a part hereof.

LESSOR and LESSEE presently desire to amend said lease agreement.

Now therefore, in consideration of the premises and $10 in hand paid each to the other, receipt of which is hereby acknowledged, said lease agreement shall be and is hereby amended as follows:

1. Article 3, Line 26, change date to read: "July 1, 1977" and change date in line 33 to read: "July 31, 1977".

2. Article 5, Rent, is amended to read:

   "Twelve hundred and fifty one dollars and 59/100 ($1,251.59)" due to lowest bid being $70,159.00.

In all other respects said lease agreement is hereby ratified and reaffirmed.

Executed this 25th day of February, 1977.

ATTEST:

By [signature]
Assistant Secretary

LESSEE
THE SOUTHLAND CORPORATION

By [signature]
Vice President

Debra M. Cox

LESSOR
[signature]
WSH Investments

PROPERTY DESCRIPTION

Attached to and made a part of Lease dated Oct. 14, 1976 between W S H Investments, referred to as Lessor, and The Southland Corporation, referred to as Lessee.

Leased premises are a part of the below described property and further depicted on attached Schedule B:

Said property beginning at a point on the Southwesterly side of Delaware Route 896, said point being a common corner for lands herein being described and the entrance road to the Four Seasons development; thence from said point of beginning along said Delaware Route 896, S2 17 44 W 148.389' to a point; thence proceeding N 85 23 30 W 274.999' to a point thence proceeding N 2 17 44 E 137.289' to a point; thence proceeding S 87 42 16 E 274.789' to the point of beginning.

Said lessee's property is shown and further described on plot plan drawing #2, dated 8/2/76, attached hereto and entitled Schedule B, as Proposed Retail Store, 2400 square feet, #I and is outlined in red. Common use areas are outlined in green.

exclusive right to use the 5 parking spaces immediately North of said store, all as

INITIALS

SCHEDULE A



DRUG STORE
LOUNGE
1728
PKG. STORE
1440
RETAIL STORE
SERVICE LANE
TYPICAL SPACE
SPACES
22 SPACES
15 SPACES
EXISTING STRUCTURE TO BE REMOVED
EXIT
FOUR SEASONS PARKWAY
DELAWARE ROUTE

SCHEDULE "B"

Feb 25 2005 12:47

FEB-25-2005 12:02 7-ELEVEN, INC. 214 828 7631 P.15/16

DEED-TYPEWRITER Printed and Sold by Hugh A. George Co., Stationers, Wilmington, Del.

VOL 2122 PAGE 79

BOARD OF ASSESSMENT, NEW CASTLE COUNTY REGISTERED

**This Deed, Made this** 15th day of June

08322

in the year of our LORD one thousand nine hundred and eighty-three

BETWEEN, JACK P. STOLTZ and MORRIS LEWIS STOLTZ, II, of New Castle County, Delaware, parties of the first part,

AND

MARTUSCELLI INVESTMENT ASSOCIATES, a Delaware general partnership, party of the second part.

**Witnesseth,** That the said parties of the first part, for and in consideration of the sum of TEN DOLLARS ($10.00) ---------------- lawful money of the United States of America, the receipt whereof is hereby acknowledged, hereby grant / quitclaim and convey unto the said party of the second part,

**ALL** that certain lot, piece or parcel of land with the improvements thereon erected, situate in Pencader Hundred, New Castle County and State of Delaware, more particularly bounded and described in accordance with a recent survey prepared by Howard L. Robertson, Inc., Professional Engineers and Surveyors, dated June 9, 1983, as follows, to wit:

BEGINNING at the intersection of the Southerly side of Four Seasons Parkway (100' wide) and the Westerly side of Delaware Route #896 (80' wide); thence from said point of Beginning along the aforesaid side of Delaware Route #896 South 02° 17' 44" East, 148.39' to a point in line of lands now or late of Salinski; thence thereby North 85° 23' 30" West 274.99 feet to a point in line of lands now or late of The Robino-Ladd Company; thence thereby North 02° 17' 44" East, 137.29' to a point in the first-mentioned side of Four Seasons Parkway; and thence thereby South 87° 42' 16" East 274.79' to the point and place of Beginning. Containing within the above described metes and bounds 0.904 acres of land be the same more or less.

TOGETHER with perpetual easements for the purpose of installing, repairing and renewing pipes, concrete swales and other improvements for drainage purposes over and across all those certain parcels more particularly bounded and described as follows, to wit:

NO. 1 BEGINNING at a common corner for the above described premises and lands now or formerly of Four Seasons Homeowner's Association in the Southerly side of Four Seasons Parkway at (100' wide); thence from said point of Beginning along the said division line South 02° 17' 44" West 32.20' to a point; thence North 59° 58' 02" West 15.00' to a point and thence North 30° 03' 38" East 28.50' to the point and place of Beginning. Be the contents thereof what they may.

RECEIVED OCT 24 1983 PROPERTY ACCOUNTING THE SOUTHLAND CORPORATION

NO. 2 BEGINNING at a point in a common corner for the above described premises for land now or late of Salinski, and for other lands now or formerly of Four Seasons Homeowner's Association: thence from said point of Beginning along line of lands now or formerly of Salinski, North 85° 23' 30" West 40.00' to a point; thence North 02° 17' 46" East 15.00' to a point; thence South 85° 23' 30" East 40.00' to a point in the division line between the above-described premises and lands now or formerly of Four Seasons Homeowner's Association and thence thereby South 02° 17' 44" West 15.00' to the point and place of Beginning. Be the contents thereof what they may.

BEING the same lands and premises which W S H INVESTMENTS, by Deed dated coincident herewith and intended to be recorded immediately prior hereto in the Office of the Recorder of Deeds, in and for New Castle County, Delaware, did grant and convey unto Jack P. Stoltz and Morris Lewis Stoltz, II, in fee.

Parcel No. 11 017 40 169

Grantee's Mailing Address:

6 Thanksgiving Way
Newark, DE 19702

**In Witness Whereof,** the said parties of the first part have hereunto set their hands and seals, the day and year aforesaid.

Sealed and Delivered in the Presence of

[signature] JACK P. STOLTZ (SEAL)

[signature] MORRIS LEWIS STOLTZ, II (SEAL)

**State of Delaware,**
NEW CASTLE **County,** } ss.

**Be It Remembered,** That on this 15th day of June in the year of our LORD, one thousand nine hundred and eighty-three personally came before me the Subscriber, a Notary Public for the State and County aforesaid, JACK P. STOLTZ and MORRIS LEWIS STOLTZ, II,

parties to this Indenture, known to me personally to be such, and severally acknowledged this Indenture to be their Deed.

GIVEN under my Hand and Seal of office, the day and year aforesaid.

[signature]
Notary Public