REC C198 PAGE 274

MEMORANDUM OF LEASE

2874

This is a Memorandum of Lease between W.S.H. Investments ("Lessor"), of 2502 Silverside Road, Suite 8, Wilmington, DE 19803, and THE SOUTHLAND CORPORATION ("Lessee"), of 2828 North Haskell Avenue, Dallas, Texas, the terms of which are as follows:

Date of Lease: Oct. 14, 1976

Description of leased premises: See Exhibit A attached hereto. (Xerox copy of legal description from lease)

Date of commencement: The first day of the first calendar month following (1) 15 days after the acceptance by LESSEE'S architect of the building and other improvements to be constructed on the demised premises, or (2) the date that LESSEE or its assigns shall first be open for business to the public, whichever event first occurs.

Term: 20 Years.

Renewal option: Lessee has 3 successive options to extend for a period of 5 years each. Options must be exercised at least 60 days prior to expiration of term or extended term.

Purchase option (s): Lessee has first refusal option to purchase during entire term and extensions; ~~and option to purchase at stated price at end of term.~~

The purpose of this Memorandum of Lease is to give record notice of the lease and of the rights created thereby, all of which are hereby confirmed.

In witness whereof, the parties have executed this Memorandum of Lease as of the dates set forth in their respective acknowledgments.

(SEAL)

Attest: [signature]

~~Assistant Secretary~~

LESSOR:

By [signature: Carl G. Wittig]

(SEAL)

Attest: [signature]

Assistant Secretary

THE SOUTHLAND CORPORATION

By [signature]

Vice President

form 4400010 (RE-34)

STATE OF DE }
COUNTY OF NEW CASTLE

On August 20th 1976 before me, the undersigned, a Notary Public in and for said State, personally appeared CARL G. WITTE

known to me to be the person whose name IS subscribed to the within instrument and acknowledged that HE executed the same.

WITNESS my hand and official seal.

Signature Letha K. Scanlon

LETHA K. SCANLON
Name (Typed or Printed)

(This area for official notarial seal)

(TI)

TO 448 C
(Corporation)

STATE OF } SS.
COUNTY OF

On before me, the undersigned, a Notary Public in and for said State, personally appeared known to me to be the President, and known to me to be Secretary of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature

Name (Typed or Printed)

(This area for official notarial seal)

(TI)

TO 448 C
(Corporation)

STATE OF Texas } SS.
COUNTY OF Dallas

On Oct. 14, 1976 before me, the undersigned, a Notary Public in and for said State, personally appeared S. Richard Dole and Perry Hawkins known to me to be the Vice President and known to me to be Asst. Secretary of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature Debbie McAllister

Name (Typed or Printed)

(This area for official notarial seal)

DEBBIE McALLISTER, Notary Public
in and for Dallas County, Texas
My Commission Expires June 1, 1977

GSCL

#18464

LEASE AGREEMENT

1. PARTIES. THIS LEASE AGREEMENT is between W.S.H. Investments

herein referred to as LESSOR, and THE SOUTHLAND CORPORATION, a Texas Corporation, herein referred to as LESSEE.

2. PREMISES. LESSOR hereby leases to LESSEE and LESSEE leases from LESSOR, for the term and upon the terms and conditions hereinafter set forth, the premises described in Schedule A and shown on the plot plan which is Schedule B, both of which schedules are attached hereto and made a part hereof, together with the building and other improvements to be constructed thereon as hereinafter provided, and together with the right to use all adjoining parking areas, driveways, sidewalks, roads, alleys and means of ingress and egress in the shopping center of which the leased premises are a part, insofar as LESSOR has the power to lease or license the use thereof. (If Schedule B conflicts with the revised plot plan as hereinafter provided, the revised plot plan shall control.)

3. CONSTRUCTION. LESSOR agrees at LESSOR'S expense to construct on the leased premises a building and other improvements in accordance with plans and specifications approved by LESSEE. LESSOR acknowledges receipt of Set No. 75F 60 x 40 *Mansard of LESSEE'S standard plans and Set No. 75F 60 x 40 *Mansard of LESSEE'S standard specifications. The parties agree promptly to obtain an architect's plot plan and, if revision of LESSEE'S standard plans and specifications is necessary, to obtain revised plans and specifications, the plot plan and any revision of the plans and specifications to be approved by LESSEE and the cost thereof to be paid by LESSOR. LESSEE'S approval shall be evidenced by the signature of LESSEE'S authorized representative on the plot plan and on the top sheet of one set of plans and specifications. LESSOR agrees on or before March 31, 19 77 to complete construction of the building and other improvements in strict accordance with the plot plan and plans and specifications as approved by LESSEE. If without the prior written consent of LESSEE to extend the time for construction, which consent LESSEE shall not unreasonably withhold, LESSOR shall fail to complete the construction on or before the agreed date, LESSEE may enforce specific performance of LESSOR'S covenants and agreements or may pursue any other available legal or equitable remedy. If LESSOR for any reason whatever shall fail to complete the construction before June 30, 19 77, LESSEE shall have the option to terminate this lease. See Addendum #31

4. TERM. The primary term of this lease shall commence on the first day of the first calendar month following (1) 15 days after the acceptance by LESSEE'S architect of the building and other improvements to be constructed on the demised premises, or (2) the date that LESSEE or its assigns shall first be open for business to the public, whichever event first occurs; and shall continue for a period of 20 years thereafter, unless sooner terminated or extended as hereinafter provided. Should such event occur on other than the first day of a calendar month, LESSEE agrees to pay a proportionate part of the monthly rental herein provided for that month only. LESSEE shall have and is hereby granted a total of 3 successive options to extend the term of this lease for ~~any~~ a period of ~~time not exceeding~~ 5 years for each such option upon the same covenants and conditions as herein provided. If LESSEE shall elect to exercise one or more of such options it shall do so by giving LESSOR written notice at least 90 days prior to the expiration of the primary term or of the then current extension, and in such notice LESSEE shall state the date to which it elects to extend the term.

5. RENT. LESSEE agrees to pay to LESSOR or his designee a minimum rental of Twelve Hundred and Fifty Dollars ($1250.00) per month for each and every month during the terms of this lease, such monthly rental to be paid in advance on or before the fifth day of each month (unless such rental shall be abated or diminished as provided hereinafter.) Not later than 60 days after the end of each calendar year, LESSEE shall furnish LESSOR a statement showing the gross sales (computed as hereinafter provided) made in the store on the leased premises during such calendar year. At the time such statement is furnished LESSEE agrees to pay to LESSOR, as additional rent due hereunder, an amount of money equal to Two per cent (2 %) of such sales, less the total of the monthly rentals paid during the preceding calendar year. In computing sales for the purposes of this provision, LESSEE shall take the total amount of all sales of every kind made in the store on the leased premises and deduct therefrom the following to the extent that same are included in such total amount: (1) refunds made to customers, (2) sales, excise and gross receipts taxes, and (3) proceeds from the sale of money orders (fees received for issuance of money orders shall not be deducted). Such rental payments may be paid by check and sent to LESSOR by ordinary first class mail. See Addendum #32

6. USE. The premises may be used for the retail sale of merchandise customarily sold at stores operated by or under franchise from LESSEE or at grocery stores of the type commonly called supermarkets, including but not limited to groceries, produce, meat, dairy products, beer, wine and alcoholic beverages, gasoline and petroleum products, and sundries. With the written consent of LESSOR, which consent shall not be unreasonably withheld, the premises may be used for any other lawful purpose not in conflict with any use provision contained in leases covering other buildings leased by LESSOR in the shopping center of which the LESSEE has actual knowledge. ~~LESSOR agrees promptly to apply for an "offsale" beer and wine license for the premises. If LESSEE finds that such a license is not obtainable, LESSEE may terminate this lease at any time within forty days after the date of execution of this lease, but if LESSEE fails to terminate this lease within such period, thereafter LESSEE shall not have any right to terminate this lease because such a license is not obtained. If LESSEE terminates this lease under this provision, LESSEE agrees to reimburse LESSOR for all reasonable expenses actually incurred by LESSOR for the preparation of the plot and plans and specifications prior to such termination.~~

7. UTILITIES. LESSEE agrees to pay all charges for gas, electricity and water used by it.

8. TAXES. ~~LESSEE agrees to pay all taxes levied upon personal property, including trade fixtures and~~

~~inventory, not owned by LESSOR and kept on the leased premises. LESSOR agrees to pay all taxes and assessments levied against the land and the building and improvements, other than trade fixtures of LESSEE situated thereon.~~ See Addendum #33

**9. MAINTENANCE.** LESSOR agrees to maintain in good repair the outside walls, roof and floor of the building and surface of the parking areas, sidewalks and driveways, as well as the structural soundness of the building, and all underground gas, water and sewer pipes except those parts of such pipes as are in or directly beneath the floor of the building. LESSEE agrees to keep the inside of the building in good repair, including the plumbing, electrical wiring, air conditioning and heating equipment, and those parts of underground gas, water and sewer pipes as are contained in or are directly beneath the floor of the building, and to paint the exterior walls and be responsible for all glass, casualty damage and reasonable wear and tear excepted.

**10. ALTERATIONS.** LESSEE shall not make any alterations involving structural changes without securing LESSOR'S written consent. Other alterations or additions, such as to store front, marquee and non-weight bearing partitions, may be made by LESSEE in a good workmanlike manner without cost to LESSOR.

**11. TRADE AND OTHER FIXTURES.** LESSEE may install or cause to be installed such equipment and trade and other fixtures as are reasonably necessary for the operation of its business. Such equipment and trade and other fixtures may be installed prior to acceptance of the improvements and shall remain personal property, and title thereto shall continue in the owner thereof, regardless of the manner in which same may be attached or affixed to the demised premises. In the event such equipment and trade or other fixtures are subject to a lien or title retention instrument, the holder of such lien or title retention instrument shall have the right and be able to enforce the same as stated therein.

**12. CASUALTY DAMAGE.** ~~If, in the opinion of LESSEE, the leased premises are rendered substantially~~ unfit for the occupancy or use herein contemplated by any casualty or peril insured against in a standard fire and extended coverage insurance policy of the type then commonly purchased by owners of small commercial buildings in the area in which the leased premises are situated (such a casualty or peril being hereinafter referred to as an insurable casualty or peril) and the primary term or the then current extension of the term shall have at least two years to run, LESSOR at LESSOR'S expense shall promptly and diligently restore the leased premises to the condition existing prior to the occurrence of the insurable casualty or peril, and all rental shall abate from the date of such occurrence until the leased premises are so restored. If, in the opinion of LESSEE, the leased premises are rendered substantially unfit for the occupancy or use herein contemplated by any casualty or peril other than an insurable casualty or peril, or by any casualty or peril whatever when the primary term or the then current extension of the term shall have less than two years to run, LESSOR may either restore the leased premises at LESSOR'S expense as above provided or LESSOR may terminate this lease effective as of the date of the occurrence of the casualty or peril; provided, that LESSOR shall not have the right to so terminate this lease if the casualty or peril is an insurable casualty or peril and within 10 days after the occurrence of the casualty or peril LESSEE exercises any option to extend the term of this lease for a period of at least two years, or if the casualty or peril is other than an insurable casualty or peril and LESSEE within 10 days after the occurrence of the casualty or peril shall agree in writing to restore the leased premises at LESSEE'S expense. If, in the opinion of LESSEE, the leased premises are not thereby rendered substantially unfit for the occupancy or use herein contemplated, LESSOR shall promptly and diligently restore the leased premises at LESSOR'S expense to the condition existing prior to the occurrence of the casualty or peril and the rental shall not abate because of such damage. On written ~~request of LESSEE, LESSOR shall furnish to LESSEE the name and address of its casualty insurance carrier.~~ See Addendum #34

**13. LIABILITY INSURANCE.** LESSEE agrees at LESSEE'S expense to maintain in force continuously throughout the term of this lease and any extension hereof public liability insurance covering the leased premises, with limits of $100,000.00 for death or injury to one person, $300,000.00 for death or injury to more than one person, and $25,000.00 for property damage, and shall upon written request of LESSOR furnish LESSOR a certificate by the insurer that such insurance is in force.

**14. COMPLIANCE WITH LAWS.** LESSEE will promptly comply with all applicable and valid laws, ordinances and regulations of Federal, State, County, Municipal or other lawful authority pertaining to the use and occupancy of the leased premises.

**15. ASSIGNMENT AND SUBLETTING.** LESSEE shall have the right to assign or sublease the whole or any part of the demised premises, provided that any assignment or sublease shall be subject to all of the terms and conditions of this lease and that LESSEE shall remain primarily liable for the payment of the rent and the performance of the terms and conditions of this lease.

**16. BANKRUPTCY.** Should LESSEE make an assignment for benefit of creditors, or be adjudicated bankrupt, such action shall constitute a breach of this lease for which LESSOR, at its opinion, may terminate all rights of LESSEE or its successors in interest under this lease.

**17. EMINENT DOMAIN.** If all of the leased premises and common areas is taken under the power of eminent domain or conveyed under threat of condemnation proceedings, or if only a part of such premises or common areas is so taken or conveyed and LESSEE shall determine that the remainder is inadequate or unsatisfactory for its purposes, which determination shall not be arbitrarily or capriciously made, then, in either event, this lease shall terminate effective as of the date LESSEE is required to give up the right to occupy or use any part of the leased premises or common areas. The termination of this lease as above provided shall not operate to deprive LESSEE of the right to make claim against the condemning authority for any damages suffered by LESSEE, but LESSEE shall have no right to make any claim against LESSOR because of such termination. If this lease is not terminated as above provided, LESSOR and LESSEE shall agree upon an equitable reduction of the rental. If the parties fail to agree upon such reduction within 60 days from the date of the final award or payment for the part of the leased premises so taken or conveyed, LESSOR and LESSEE shall each choose one arbitrator and the two arbitrators so chosen shall choose a third arbitrator. The decision of any two of the arbitrators as to the rental reduction, if any, shall be binding

on LESSEE and LESSOR and any expense of the arbitration shall be divided equally between LESSEE and LESSOR.

18. **ATTORNEYS' FEES.** If suit is brought to enforce any covenant of this lease or for the breach of any covenant or condition herein contained, the parties hereto agree that the losing party shall pay to the prevailing party a reasonable attorneys' fee, which shall be fixed by the court, and court costs.

19. **DEFAULT.** In the event LESSEE shall default in the payment of the monthly rent as provided herein, LESSOR shall promptly so notify LESSEE in writing, and failure of LESSEE to cure such default within twenty days after receipt of such notice shall, at the option of the LESSOR, work as a forfeiture of this lease, or LESSOR may enforce performance in any manner provided by law, and LESSOR'S agent or attorney shall have the right without further notice or demand to re-enter and remove all persons from LESSOR'S property without being deemed guilty of any manner of trespass and without prejudice to any remedies for arrears of rent or breach of covenant, or LESSOR'S agent or attorney may resume possession of the property and relet the same for the remainder of the term at the best rental such agent or attorney can obtain for the account of LESSEE, who shall pay any deficiency, and LESSOR shall have a lien as security for such rental upon the fixtures and equipment belonging to LESSEE which are on the demised premises. In the event LESSEE shall default in the performance of any of the terms or provisions of this lease other than the payment of monthly rent, LESSOR shall promptly so notify LESSEE in writing. If LESSEE shall fail to cure such default within twenty days after receipt of such notice, or if the default is of such character as to require more than twenty days to cure and LESSEE shall fail to commence to do so within twenty days after receipt of such notice and thereafter diligently proceed to cure such default, then in either such event LESSOR may cure such default and such expense shall be added to the rent otherwise due, but any such default shall not work as a forfeiture of this lease.

In the event LESSOR shall default in the performance of any of the terms or provisions of this lease (other than Art. 4 dealing with construction of improvements which contains special terms for notice and correction of defaults), LESSEE shall promptly so notify LESSOR in writing. If LESSOR shall fail to cure such default within twenty days after receipt of such notice, or if the default is of such character as to require more than twenty days to cure and LESSOR shall fail to commence to do so within twenty days after receipt of such notice and thereafter diligently proceed to cure such default, then, in either event, LESSEE may cure such default and such expense shall be deducted from the rent otherwise due or cancel and terminate this lease.

20. **RIGHT OF FIRST REFUSAL.** If during the term of this lease, or any extension thereof, LESSOR shall receive a bona fide offer to purchase the demised premises, which offer is acceptable to LESSOR, LESSOR agrees that LESSEE shall have and is hereby granted an option to purchase the demised premises upon the same terms and provisions. LESSOR agrees immediately after receipt of such offer to give LESSEE notice in writing of the terms and provisions thereof, and that LESSEE may exercise its option to purchase said property at any time within twenty days after such notice is received by LESSEE. If LESSEE shall elect to exercise such option it shall do so by giving notice in writing to LESSOR within such twenty-day period and a contract of sale shall be executed by the parties and title closed within a reasonable time thereafter. The failure of LESSEE to exercise the option provided in this article shall in no way relieve or release LESSOR from the terms and effect of the option granted in Article 21.

21. **OPTION TO PURCHASE.** ~~LESSOR agrees that LESSEE shall have and is hereby granted an option to purchase the leased premises at the expiration of the term of this lease, or any extension thereof for ________ Dollars ($________). LESSEE may exercise this option to purchase at any time within twenty days prior to the date of expiration by giving written notice to LESSOR and a contract of sale shall be executed by the parties and title closed within a reasonable time thereafter. Should such reasonable time extend beyond said expiration, this lease and all of its terms and conditions shall automatically be extended until closing. Rent is to be apportioned to date of closing.~~

22. **COMMON AREAS.** LESSOR shall be responsible for cleaning and lighting the parking and other common areas of the shopping center designated on Schedule B, but LESSEE shall bear a part of the cost of such cleaning and lighting in proportion to the number of square feet of floor space of the building leased by LESSEE as compared with the total number of square feet of floor space of all the buildings in the shopping center. That part of the common areas which primarily serves the customers of the building leased by LESSEE shall be lighted at night during LESSEE'S business hours. Upon the written request of LESSEE, LESSOR shall award a contract for cleaning the common areas to the lowest of three bidders, one of whom may be LESSEE. Lessee's maximum cost shall not exceed $25.00 per month.

23. **CO-TENANCY.** Excepting one liquor store & one tavern selling prepared food, LESSOR agrees that no building in the shopping center shall be occupied by a business selling food or alcoholic beverages for consumption on the premises without the prior written consent of LESSEE. Also included in this restriction are pizza outlets, sandwich shops, beauty shops, and barber shops.

24. **EXCLUSIVE.** LESSOR agrees that no occupant of any building in the shopping center other than the herein leased building shall be allowed to sell packaged fluid milk, packaged bread products, or delicatessen type food products for consumption off the premises, except a grocery store occupying a building containing more than 10,000 square feet of floor space.

25. **LESSOR'S COVENANTS.** LESSOR covenants that he has good and marketable title to the demised premises in fee simple absolute and that the same is subject to no leases, tenancies, agreements, encumbrances, liens, restrictions or defects in title affecting the demised premises or the rights granted LESSEE in this lease; that there are no restrictive covenants, zoning or other ordinances or regulations applicable to the demised premises which will prevent LESSEE from conducting its usual business; and that, in the event the demised premises are in an area where the sale of beer for off-premises consumption is permitted by law, there are no restrictive covenants applicable to the demised premises which will prevent LESSEE from selling beer for off-premises consumption.

26. **QUIET ENJOYMENT.** LESSEE upon paying the rent and performing the covenants and



form 4400011
Sheet 2 of 2

agreements of this lease shall quietly have, hold and enjoy the demised premises and all rights granted LESSEE in this lease during the term thereof and extensions thereto, if any.

**27. SUBORDINATION.** LESSEE hereby agrees that its leasehold interest hereunder is subordinate to any mortgages now on, or hereafter to be placed on, the premises leased hereunder; provided, as a condition precedent to such subordination, each such mortgagee shall expressly covenant or each such mortgage shall expressly provide that so long as the LESSEE is not in default under said Lease Agreement, the LESSEE'S quiet possession of the portion of the premises leased hereunder shall remain undisturbed, on the terms and conditions stated herein, whether or not the mortgage is in default and notwithstanding any foreclosure or other action brought by the holder of the mortgage in connection therewith.

This Subordination Agreement shall be self operative and no further instrument or certificate of subordination shall be required from LESSEE.

**28. NOTICES.** Any notices required or permitted hereunder shall be in writing and delivered either in person to the other party or the other party's authorized agent, or by United States Certified Mail, Return Receipt Requested, postage fully prepaid, to the addresses set forth hereinafter, or to such other address as either party may designate in writing and deliver as herein provided.

**LESSOR:** W.S.H. Investments
2502 Silverside Road, Suite 8
Wilmington, DE 19803

**LESSEE:** THE SOUTHLAND CORPORATION
Attn: Director of Property
2828 North Haskell Avenue
Dallas, Texas 75204

**29. RECORDING.** This lease agreement shall not be filed for public record by any party hereto, but when the construction of the building and other improvements is completed as herein provided LESSOR and LESSEE shall execute and acknowledge a memorandum or short form lease setting forth the parties, description of the leased premises, term of the lease, options for extension of the term, if any, and any other provision hereof, the inclusion of which shall be mutually agreed upon by LESSOR and LESSEE, which memorandum or short form lease may be filed for public record by any party hereto. However, at the option of either party, a short form or memorandum of lease may be filed by either party at any time after the execution of this lease agreement.

**30. COMPLETE AGREEMENT.** This lease contains a complete expression of the agreement between the parties and there are no promises, representations or inducements except such as are herein provided.

Added Addendum containing Articles 31 through 34 is hereby incorporated into and made a part of this lease.

This lease agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

EXECUTED BY LESSOR this 20th day of August, 1976

LESSOR Carl G. Wattie (Seal)

EXECUTED BY LESSEE this 14th day of Oct, 1976

THE SOUTHLAND CORPORATION (Seal)

ATTEST: [signature]

Assistant Secretary

[signature]

Vice President

referred to as ... and THE SOUTHLAND CORPORATION, referred to as LESSEE.

31. CONSTRUCTION. Lessor agrees to construct a 20' x 60' reinforced concrete parking apron directly in front of the proposed store regardless of whether or not said parking apron is shown on plans furnished by Lessee.

31. A See Attachment

32. COMMODITY PRICE INDEX RENTAL ADJUSTMENT. The minimum rent provided herein shall be adjusted at the end of the primary term of the lease or any extension thereof by applying the following formula: If the average of the monthly Wholesale Commodity Price Index prepared by the Department of Labor of the United States for the three months prior to the commencement of each option, or extension period should be greater or less than the average of the monthly Wholesale Price Index for the three months prior to the commencement of this lease, then the said monthly rental for the next ensuing option or extension shall be the sum of the minimum monthly rental provided herein for the primary term multiplied by a fraction of which the numerator shall be such average of the monthly Wholesale Commodity Price Index for the three months prior to the commencement of that particular option or extension period and the denominator shall be the average of the monthly Wholesale Commodity Price Index for the three months prior to the commencement of this lease. If at the expiration of the original term of this lease said index be no longer compiled, then another index generally recognized as authoritative shall be substituted by agreement, but if the parties do not agree, the substitute index shall be selected by the majority determination of three arbitrators appointed for the purpose, one being appointed by Lessor, one by Lessee, and a third by the two arbitrators appointed by Lessor and Lessee.

33. TAXES. LESSEE hereby agrees to reimburse LESSOR for 100 % of the amount of real estate taxes levied against that portion of the shopping center leased by LESSEE. If separate assessments are not made on each unit of the shopping center, the amount of taxes for which LESSEE is liable under this agreement shall be a percentage of the total amount of taxes levied against said shopping center. This percentage shall be determined by dividing the amount of square feet leased under this agreement by the total amount of square feet in the said center. However, if LESSEE shall determine that in his appraisal the assessor (s) used a lower price per square foot on the portion of the building occupied by LESSEE than on the balance of the building and/or that the land occupied by LESSEE is appraised on a basis lower than that used for the balance of the land on which the shopping center is located, LESSEE may show evidence of said lower appraisal to LESSOR and use said lower appraisal times the percentage of assessment and the current tax rate as a basis for reimbursement to LESSOR. LESSOR further agrees that LESSEE is liable for only his determinable percentage of the lowest discounted amount and LESSEE will not be required to pay any penalty, interest or other costs accruing by reason of the LESSOR'S failure to pay said taxes when due. LESSOR further agrees to make presentation of said tax receipt (s) to LESSEE within six months after payment by LESSOR to the taxing jurisdiction (s) or forfeit all rights to recover said taxes for that particular tax year. Any amounts paid by LESSEE as real property taxes on the demised premises shall be deducted from any percentage rental otherwise due hereunder.

34. CASUALTY DAMAGE. Article 12 of this lease is hereby deleted and this clause is substituted in its place. If, in the opinion of LESSEE, the leased premises are rendered substantially unfit for the occupancy or use herein contemplated by any casualty or peril insured against in a standard fire and extended coverage insurance policy of the type then commonly purchased by LESSEE (such a casualty or peril being hereinafter referred to as an insurable casualty or peril) and the primary term or the then current extension of the term shall have at least two years to run, LESSEE at its option may promptly and diligently restore the leased premises to the condition existing prior to the occurrence of the insurable casualty or peril or may release and turn over to LESSOR the insurance proceeds as a result thereof and cancel and terminate this lease. If, in the opinion of LESSEE, the leased premises are rendered substantially unfit for the occupancy or use herein contemplated by any casualty or peril other than an insurable casualty or peril or by any casualty or peril whatever when the primary term or the then current extension of the term shall have less than two years to run, LESSEE may either restore the leased premises at its expense as above provided or LESSEE may release and turn over to LESSOR the insurance proceeds as a result thereof and terminate this lease effective as of the date of occurrence of the casualty or peril. If, in the opinion of LESSEE, the leased premises are not thereby rendered substantially unfit for the occupancy or use herein contemplated, LESSEE shall promptly and diligently restore the leased premises at LESSEE'S expense to the condition existing prior to the occurrence of the casualty or peril. Since LESSEE has agreed to restore the demised premises in the event of casualty damage and since LESSEE has numerous other properties as to which it is self-insured, LESSEE may be a self-insurer as to the demised premises; provided, that on the written request of LESSOR, LESSEE shall procure and maintain fire and extended coverage insurance on the building of the type then commonly purchased by LESSEE, to at least 80% of its insurable value and naming LESSOR as an additional assured.

ADDENDUM 31-A

[illegible] part [illegible] and [illegible]

[illegible] agreed [illegible] Lessee's [illegible] improvements [illegible] contractors approved by Lessee. [illegible] the lowest [illegible] such contract [illegible] is more or less that $[illegible], the monthly minimum rental herein shall be increased or decreased by [illegible] one percent (1%) of such difference, or, at its option, the Lessee may pay any [illegible] within [illegible] days after completion of the improvements in lieu of adjusting the minimum monthly rent. If the lowest of such bids exceeds $[illegible], Lessee may, at its option, cancel this lease within [illegible] days after receiving written notification of such bid.

The items to be included in such bids are as follows:

a. Construction cost of the building from the "ground up" complete with electrical service, plumbing and sanitary mains to be stubbed out 5' from the building perimeter all as shown on Lessee's typical drawings and specifications described in paragraph 3 of this lease.

b. Additional cost to extend and connect sewers, water, gas, and electrical mains from item a. to service locations not to exceed 35' from the leased property lines. (Not including city front-footage connection fees in excess of $1.00 per front foot or liens against the property for city-installed mains, should either exist.)

c. Cost of grading and paving parking lot within Lessee's leased area and to Lessee's specifications adequate to insure natural drainage from site.

d. Construction of concrete apron as described in Paragraph 31.



PROP[illegible]

[illegible] and made a part [illegible] Oct. 14, 1976
between W [illegible] Investments, [illegible]
Southland Corporation [illegible]

Leased premises are a part of the below described property and further depicted on attached Schedule B:

Said property beginning at a point on the Southwesterly side of Delaware Route 896, said point being a common corner for lands herein being described and the entrance road to the Four Seasons development; thence from said point of beginning along said Delaware Route 896, S2 17 44 W 148.389' to a point; thence proceeding N 85 23 30 W 274.999' to a point thence proceeding N 2 17 44 E 137.289' to a point; thence proceeding S 87 42 16 E 274.789' to the point of beginning.

Said lessee's property is shown and further described on plot plan drawing #2, dated 8/2/76, attached hereto and entitled Schedule B, as Proposed Retail Store, 2400 square feet, #I and exclusive right to use the 5 parking spaces immediately North of said store, all as is outlined in red. Common use areas are outlined in green.

INITIALS

SCHEDULE A

AMENDMENT NO. one (1)
STORE NO. 1126-18494

On the 14th day of October, 1976, W.S.H. Investments 2502 Silverside Rd., Suite 8, Wilmington, Delaware 19803 as LESSOR, and The Southland Corporation as LESSEE, entered into a lease agreement covering the premises commonly known as Store #1, 4 Seasons Center, Rt. 896, New Castle County, Dela. and more fully described in Schedule A, which Schedule is attached hereto and made a part hereof.

LESSOR and LESSEE presently desire to amend said lease agreement.

Now therefore, in consideration of the premises and $10 in hand paid each to the other, receipt of which is hereby acknowledged, said lease agreement shall be and is hereby amended as follows:

1. Article 3, Line 26, change date to read: "July 1, 1977" and change date in line 33 to read: "July 31, 1977".

2. Article 5, Rent, is amended to read:

   "Twelve hundred and fifty one dollars and 59/100 ($1,251.59)" due to lowest bid being $70,159.00.

In all other respects said lease agreement is hereby ratified and reaffirmed.

Executed this 25th day of February, 1977.

ATTEST:

By [signature]
Assistant Secretary

LESSEE
THE SOUTHLAND CORPORATION

By [signature]
Vice President

[signature] Debra M. Cox

LESSOR

[signature]
WSH Investments

PROPERTY DESCRIPTION

Attached to and made a part of Lease dated Oct. 14, 1976 between W S H Investments, referred to as Lessor, and The Southland Corporation, referred to as Lessee.

Leased premises are a part of the below described property and further depicted on attached Schedule B:

Said property beginning at a point on the Southwesterly side of Delaware Route 896, said point being a common corner for lands herein being described and the entrance road to the Four Seasons development; thence from said point of beginning along said Delaware Route 896, S2 17 44 W 148.389' to a point; thence proceeding N 85 23 30 W 274.999' to a point thence proceeding N 2 17 44 E 137.289' to a point; thence proceeding S 87 42 16 E 274.789' to the point of beginning.

Said lessee's property is shown and further described on plot plan drawing #2, dated 8/2/76, attached hereto and entitled Schedule B, as Proposed Retail Store, 2400 square feet, #I, and is outlined in red. Common use areas are outlined in green.

exclusive right to use the 5 parking spaces immediately North of said store, all as

INITIALS

SCHEDULE A


DRUG STORE
LOUNGE
1728
PKG. STORE
1440
RETAIL STORE
SERVICE LANE
TYPICAL SPACE
60'-0"
SPACES
22 SPACES
15 SPACES
EXIT
EXIT
EXISTING STRUCTURE TO BE REMOVED
FOUR SEASONS PARKWAY
DELAWARE ROUTE

**SCHEDULE "B"**

DEED-TYPEWRITER

(No. 44-B) Printed and Sold by Hugh A. George Co., Stationers, 610 Tatnall St., Wilmington, Del.

VOL 2122 PAGE 79

ASSESSMENT, NEW CASTLE COUNTY BOARD OF — REGISTERED in the year of

# This Deed, Made this

08322 - 15th day of June

our LORD one thousand nine hundred and eighty-three

BETWEEN, JACK P. STOLTZ and MORRIS LEWIS STOLTZ, II, of New Castle County, Delaware, parties of the first part,

AND

MARTUSCELLI INVESTMENT ASSOCIATES, a Delaware general partnership, party of the second part.

**Witnesseth,** That the said parties of the first part, for and in consideration of the sum of TEN DOLLARS ($10.00) -------------- lawful money of the United States of America, the receipt whereof is hereby acknowledged, hereby grant / quitclaim and convey unto the said party of the second part,

**ALL** that certain lot, piece or parcel of land with the improvements thereon erected, situate in Pencader Hundred, New Castle County and State of Delaware, more particularly bounded and described in accordance with a recent survey prepared by Howard L. Robertson, Inc., Professional Engineers and Surveyors, dated June 9, 1983, as follows, to wit:

BEGINNING at the intersection of the Southerly side of Four Seasons Parkway (100' wide) and the Westerly side of Delaware Route #896 (80' wide); thence from said point of Beginning along the aforesaid side of Delaware Route #896 South 02° 17' 44" East, 148.39' to a point in line of lands now or late of Salinski; thence thereby North 85° 23' 30" West 274.99 feet to a point in line of lands now or late of The Robino-Ladd Company; thence thereby North 02° 17' 44" East, 137.29' to a point in the first-mentioned side of Four Seasons Parkway; and thence thereby South 87° 42' 16" East 274.79' to the point and place of Beginning. Containing within the above described metes and bounds 0.904 acres of land be the same more or less.

TOGETHER with perpetual easements for the purpose of installing, repairing and renewing pipes, concrete swales and other improvements for drainage purposes over and across all those certain parcels more particularly bounded and described as follows, to wit:

NO. 1 BEGINNING at a common corner for the above described premises and lands now or formerly of Four Seasons Homeowner's Association in the Southerly side of Four Seasons Parkway at (100' wide); thence from said point of Beginning along the said division line South 02° 17' 44" West 32.20' to a point; thence North 59° 58' 02" West 15.00' to a point and thence North 30° 03' 38" East 28.50' to the point and place of Beginning. Be the contents thereof what they may.

RECEIVED OCT 24 1983 PROPERTY ACCOUNTING THE SOUTHLAND CORPORATION

NO. 2 BEGINNING at a point in a common corner for the above described premises for land now or late of Salinski, and for other lands now or formerly of Four Seasons Homeowner's Association; thence from said point of Beginning along line of lands now or formerly of Salinski, North 85° 23' 30" West 40.00' to a point; thence North 02° 17' 46" East 15.00' to a point; thence South 85° 23' 30" East 40.00' to a point in the division line between the above-described premises and lands now or formerly of Four Seasons Homeowner's Association and thence thereby South 02° 17' 44" West 15.00' to the point and place of Beginning. Be the contents thereof what they may.

BEING the same lands and premises which W S H INVESTMENTS, by Deed dated coincident herewith and intended to be recorded immediately prior hereto in the Office of the Recorder of Deeds, in and for New Castle County, Delaware, did grant and convey unto Jack P. Stoltz and Morris Lewis Stoltz, II, in fee.

Parcel No. 11 017 40 169

Grantee's Mailing Address:

6 Thanksgiving Way
Newark, DE 19702

**In Witness Whereof,** the said parties of the first part have hereunto set their hands and seals, the day and year aforesaid.

Sealed and Delivered in the Presence of

[signature] (SEAL) JACK P. STOLTZ

[signature] (SEAL) MORRIS LEWIS STOLTZ, II

**State of Delaware,**
NEW CASTLE **County,** } ss.

**Be It Remembered,** That on this 15th day of June in the year of our LORD, one thousand nine hundred and eighty-three personally came before me the Subscriber, a Notary Public for the State and County aforesaid, JACK P. STOLTZ and MORRIS LEWIS STOLTZ, II,

parties to this Indenture, known to me personally to be such, and severally acknowledged this Indenture to be their Deed.

GIVEN under my Hand and Seal of office, the day and year aforesaid.

[signature]
Notary Public