# EXHIBIT "C"

## LEASE ASSIGNMENT

The DATE of this Assignment is June 20, 1983.

The PARTIES to this Assignment are:

A.  MORRIS LEWIS STOLTZ and JACK P. STOLTZ, individually, of New Castle County, Delaware

AND

B.  MARTUSCELLI INVESTMENT ASSOCIATES, a Delaware general partnership.

MORRIS LEWIS STOLTZ and JACK P. STOLTZ hereby grant, transfer and assign to MARTUSCELLI INVESTMENT ASSOCIATES all of their rights, title and interest in and to all leases, addenda and agreement now existing and hereafter negotiated affecting FOUR SEASONS CENTER, ROUTE #896 and FOUR SEASONS PARKWAY, NEWARK, DELAWARE.

IN WITNESS WHEREOF, the said MORRIS LEWIS STOLTZ and JACK P. STOLTZ have hereunto set their hands and seals this 20th day of June, 1983.

WITNESS:

_____          _____ (SEAL)

_____          _____ (SEAL)

STATE OF DELAWARE:
                 : S.
NEW CASTLE COUNTY:


SWORN TO AND SUBSCRIBED before me this 20th day of June, 1983.


_____
Notary Public

## LEASE ASSIGNMENT

The DATE of this Assignment is June 15, 1983.

The PARTIES of this Assignment are:

A.  W S H INVESTMENTS, a Delaware general partnership,

AND

B.  MORRIS LEWIS STOLTZ and JACK P. STOLTZ, individually, of New Castle County, Delaware.

W S H INVESTMENTS hereby grants, transfers and assigns to MORRIS LEWIS STOLTZ and JACK P. STOLTZ, individually, all of its rights, title and interest in and to all leases, addenda and agreements now existing and hereafter negotiated affecting FOUR SEASONS CENTER, ROUTE #896 and FOUR SEASONS PARKWAY, NEWARK, DELAWARE.

IN WITNESS WHEREOF, the said W S H INVESTMENTS has hereunto set its hand and seal this 15th day June, 1983.

Witness:

W S H INVESTMENTS, a Delaware general partnership

BY _____ (SEAL)

BY _____ (SEAL)

STATE OF DELAWARE:
                    : SS.
NEW CASTLE COUNTY:

SWORN TO AND SUBSCRIBED before me this 15th day of June, 1983.

_____
Notary Public

# LEASE AGREEMENT

**1. PARTIES. THIS LEASE AGREEMENT** is between ___ W.S.H. Investments ___

herein referred to as LESSOR, and THE SOUTHLAND CORPORATION, a Texas Corporation, herein referred to as LESSEE.

**2. PREMISES.** LESSOR hereby leases to LESSEE and LESSEE leases from LESSOR, for the term and upon the terms and conditions hereinafter set forth, the premises described in Schedule A and shown on the plot plan which is Schedule B, both of which schedules are attached hereto and made a part hereof, together with the building and other improvements to be constructed thereon as hereinafter provided, and together with the right to use all adjoining parking areas, driveways, sidewalks, roads, alleys and means of ingress and egress in the shopping center of which the leased premises are a part, insofar as LESSOR has the power to lease or license the use thereof. (If Schedule B conflicts with the revised plot plan as hereinafter provided, the revised plot plan shall control.)

**3. CONSTRUCTION.** LESSOR agrees at LESSOR'S expense to construct on the leased premises a building and other improvements in accordance with plans and specifications approved by LESSEE. LESSOR acknowledges receipt of Set No. 75F 60 x 40 of LESSEE'S standard plans and Set No. 75F 60 x 40 ~~*Mansard*~~ of LESSEE'S standard specifications. The parties agree promptly to obtain an architect's plot plan and, if revision of LESSEE'S standard plans and specifications is necessary, to obtain revised plans and specifications, the plot plan and any revision of the plans and specifications to be approved by LESSEE and the cost thereof to be paid by LESSOR. LESSEE'S approval shall be evidenced by the signature of LESSEE'S authorized representative on the plot plan and on the top sheet of one set of plans and specifications. LESSOR agrees on or before ___ March 31 ___, 19 77 , to complete construction of the building and other improvements in strict accordance with the plot plan and plans and specifications as approved by LESSEE. If without the prior written consent of LESSEE to extend the time for construction, which consent LESSEE shall not unreasonably withhold, LESSOR shall fail to complete the construction on or before the agreed date, LESSEE may enforce specific performance of LESSOR'S covenants and agreements or may pursue any other available legal or equitable remedy. If LESSOR for any reason whatever shall

fail to complete the construction before ___ June 30 ___, 19 77 , LESSEE shall have the option to terminate this lease.
                                                    **See Addendum #31**

**4. TERM.** The primary term of this lease shall commence on the first day of the first calendar month following (1) 15 days after the acceptance by LESSEE'S architect of the building and other improvements to be constructed on the demised premises, or (2) the date that LESSEE or its assigns shall first be open for business to the public, whichever event first occurs; and shall continue for a period of ___ three ___ years thereafter, unless sooner terminated or extended as hereinafter provided. Should such event occur on other than the first day of a calendar month, LESSEE agrees to pay a proportionate part of the monthly rental herein provided for that month only. LESSEE shall have and is hereby granted a total of 5 successive options to extend the term of this lease for ~~(24)~~ period of ~~time as remaining~~ 5 years for each such option upon the same covenants and conditions as herein provided. If LESSEE shall elect to exercise one or more of such options it shall do so by giving LESSOR written notice at least 90 days prior to the expiration of the primary term or of the then current extension, and in such notice LESSEE shall state the date to which it elects to extend the term.

**5. RENT.** LESSEE agrees to pay to LESSOR or his designee a minimum rental of ___ Twelve ___
Hundred and Fifty ___ Dollars ($ 1250.00 ) per month for each and every month during the terms of this lease, such monthly rental to be paid in advance on or before the fifth day of each month (unless such rental shall be abated or diminished as provided hereinafter.) Not later than 60 days after the end of each calendar year, LESSEE shall furnish LESSOR a statement showing the gross sales (computed as hereinafter provided) made in the store on the leased premises during such calendar year. At the time such statement is furnished LESSEE agrees to pay to LESSOR, as additional rent due hereunder, an amount of money equal to ___ Two ___ per cent ( 2 %) of such sales, less the total of the monthly rentals paid during the preceding calendar year. In computing sales for the purposes of this provision, LESSEE shall take the total amount of all sales of every kind made in the store on the leased premises and deduct therefrom the following to the extent that same are included in such total amount: (1) refunds made to customers, (2) sales, excise and gross receipts taxes, and (3) proceeds from the sale of money orders (fees received for issuance of money orders shall not be deducted). Such rental payments may be paid by check and sent to LESSOR by ordinary first class mail. **See Addendum #32**

**6. USE.** The premises may be used for the retail sale of merchandise customarily sold at stores operated by or under franchise from LESSEE or at grocery stores of the type commonly called supermarkets, including but not limited to groceries, produce, meat, dairy products, beer, wine and alcoholic beverages, gasoline and petroleum products, and sundries. With the written consent of LESSOR, which consent shall not be unreasonably withheld, the premises may be used for any other lawful purpose not in conflict with any use provision contained in leases covering other buildings leased by LESSOR in the shopping center of which the LESSEE has actual knowledge. ~~LESSEE agrees promptly to apply for an official and secure a wine license for the premises. If LESSEE finds that such a license is not obtainable, LESSEE may terminate this lease at any time within forty days after the date of execution of this lease, but if LESSEE fails to terminate this lease within such period, thereafter LESSEE shall have any right to terminate this lease because such a license is not obtained. If LESSEE terminates this lease under this provision, LESSEE agrees to reimburse LESSOR for all reasonable expenses actually incurred by LESSOR for the preparation of the plot and plans and any reductions in rent to be provided~~

**7. UTILITIES.** LESSEE agrees to pay all charges for gas, electricity and water used by it.

**8. TAXES.** ~~LESSEE agrees to pay all taxes levied upon personal property, including trade fixtures~~

ITIALS
Form 4420-319 (Rc. 2)
Page 1 of 2

~~Quantity assessed by LESSOR and held on the leased premises. LESSOR agrees to pay all taxes and assessments levied against the land and the building and improvements other than trade fixtures of LESSEE installed thereon.~~

**See Addendum #33**

**9. MAINTENANCE.** LESSOR agrees to maintain in good repair the outside walls, roof and floor of the building and surface of the parking areas, sidewalks and driveways, as well as the structural soundness of the building, and all underground gas, water and sewer pipes except those parts of such pipes as are in or directly beneath the floor of the building. LESSEE agrees to keep the inside of the building in good repair, including the plumbing, electrical wiring, air conditioning and heating equipment, and those parts of underground gas, water and sewer pipes as are contained in or are directly beneath the floor of the building, and to paint the exterior walls and be responsible for all glass, casualty damage and reasonable wear and tear excepted.

**10. ALTERATIONS.** LESSEE shall not make any alterations involving structural changes without securing LESSOR'S written consent. Other alterations or additions, such as to store front, marquee and non-weight bearing partitions, may be made by LESSEE in a good workmanlike manner without cost to LESSOR.

**11. TRADE AND OTHER FIXTURES.** LESSEE may install or cause to be installed such equipment and trade and other fixtures as are reasonably necessary for the operation of its business. Such equipment and trade and other fixtures may be installed prior to acceptance of the improvements and shall remain personal property, and title thereto shall continue in the owner thereof, regardless of the manner in which same may be attached or affixed to the demised premises. In the event such equipment and trade or other fixtures are subject to a lien or title retention instrument, the holder of such lien or title retention instrument shall have the right and be able to enforce the same as stated therein.

**12. CASUALTY DAMAGE.** ~~If, in the opinion of LESSEE, the leased premises are rendered substantially unfit for the occupancy or use herein contemplated by any casualty or peril insured against in a standard fire and extended coverage insurance policy of the type then commonly purchased by owners of small commercial buildings in the area in which the leased premises are situated (such a casualty or peril being hereinafter referred to as an insurable casualty or peril) and the primary term or the then current extension of the term shall have at least two years to run, LESSOR at LESSOR'S expense shall promptly and diligently restore the leased premises to the condition existing prior to the occurrence of the insurable casualty or peril, and all rental shall abate from the date of such occurrence until the leased premises are so restored. If, in the opinion of LESSEE, the leased premises are rendered substantially unfit for the occupancy or use herein contemplated by any casualty or peril other than an insurable casualty or peril, or by any casualty or peril whatsoever when the primary term or the then current extension of the term shall have less than two years to run, LESSOR may either restore the leased premises at LESSOR'S expense as above provided or LESSOR may terminate this lease effective as of the date of the occurrence of the casualty or peril; provided, that LESSOR shall not have the right to so terminate this lease if the casualty or peril is an insurable casualty or peril and within 10 days after the occurrence of the casualty or peril LESSEE exercises any option to extend the term of this lease for a period of at least two years, or if the casualty or peril is other than an insurable casualty or peril and LESSEE within 10 days after the occurrence of the casualty or peril shall agree in writing to restore the leased premises at LESSEE'S expense. If, in the opinion of LESSEE, the leased premises are not thereby rendered substantially unfit for the occupancy or use herein contemplated, LESSOR shall promptly and diligently restore the leased premises at LESSOR'S expense to the condition existing prior to the occurrence of the casualty or peril and the rental shall not abate because of such damage. On written request of LESSEE, LESSOR shall furnish the name and address of its casualty insurance carrier.~~

**See Addendum #34**

**13. LIABILITY INSURANCE.** LESSEE agrees at LESSEE'S expense to maintain in force continuously throughout the term of this lease and any extension hereof public liability insurance covering the leased premises, with limits of $100,000.00 for death or injury to one person, $300,000.00 for death or injury to more than one person, and $25,000.00 for property damage, and shall upon written request of LESSOR furnish LESSOR a certificate by the insurer that such insurance is in force.

**14. COMPLIANCE WITH LAWS.** LESSEE will promptly comply with all applicable and valid laws, ordinances and regulations of Federal, State, County, Municipal or other lawful authority pertaining to the use and occupancy of the leased premises.

**15. ASSIGNMENT AND SUBLETTING.** LESSEE shall have the right to assign or sublease the whole or any part of the demised premises, provided that any assignment or sublease shall be subject to all of the terms and conditions of this lease and that LESSEE shall remain primarily liable for the payment of the rent and the performance of the terms and conditions of this lease.

**16. BANKRUPTCY.** Should LESSEE make an assignment for benefit of creditors, or be adjudicated bankrupt, such action shall constitute a breach of this lease for which LESSOR, at its opinion, may terminate all rights of LESSEE or its successors in interest under this lease.

**17. EMINENT DOMAIN.** If all of the leased premises and common areas is taken under the power of eminent domain or conveyed under threat of condemnation proceedings, or if only a part of such premises or common areas is so taken or conveyed and LESSEE shall determine that the remainder is inadequate or unsatisfactory for its purposes, which determination shall not be arbitrarily or capriciously made, then, in either event, this lease shall terminate effective as of the date LESSEE is required to give up the right to occupy or use any part of the leased premises or common areas. The termination of this lease as above provided shall not operate to deprive LESSEE of the right to make claim against the condemning authority for any damages suffered by LESSEE, but LESSEE shall have no right to make any claim against LESSOR because of such termination. If this lease is not terminated as above provided, LESSOR and LESSEE shall agree upon an equitable reduction of the rental. If the parties fail to agree upon such reduction within 30 days from the date of the final award or payment for the part of the leased premises so taken or conveyed, LESSOR and LESSEE shall each choose one arbitrator and the two arbitrators so chosen shall choose a third arbitrator. The decision of any two of the arbitrators as to the rental reduction, if any, shall be binding

on LESSEE and LESSOR and any expense of the arbitration shall be divided equally between LESSEE and LESSOR.

**18. ATTORNEYS' FEES.** If suit is brought to enforce any covenant of this lease or for the breach of any covenant or condition herein contained, the parties hereto agree that the losing party shall pay to the prevailing party a reasonable attorneys' fee, which shall be fixed by the court, and court costs.

**19. DEFAULT.** In the event LESSEE shall default in the payment of the monthly rent as provided herein, LESSOR shall promptly so notify LESSEE in writing, and failure of LESSEE to cure such default within twenty days after receipt of such notice shall, at the option of the LESSOR, work as a forfeiture of this lease, or LESSOR may enforce performance in any manner provided by law, and LESSOR's agent or attorney shall have the right without further notice or demand to re-enter and remove all persons from LESSEE's property without being deemed guilty of any manner of trespass and without prejudice to any remedies for arrears of rent or breach of covenant, or LESSOR's agent or attorney may resume possession of the property and relet the same for the remainder of the term at the best rental such agent or attorney can obtain for the account of LESSEE, who shall pay any deficiency, and LESSOR shall have a lien as security for such rental upon the fixtures and equipment belonging to LESSEE which are the demised premises. In the event LESSEE shall default in the performance of any of the terms or provisions of this lease other than the payment of monthly rent, LESSOR shall promptly so notify LESSEE in writing. If LESSEE shall fail to cure such default within twenty days after receipt of such notice, or if the default is of such character as to require more than twenty days to cure and LESSEE shall fail to commence to do so within twenty days after receipt of such notice and thereafter diligently proceed to cure such default, then in either such event LESSOR may cure such default and such expense shall be added to the rent otherwise due, but any such default shall not work as a forfeiture of this lease.

In the event LESSOR shall default in the performance of any of the terms or provisions of this lease (other than Art. 4 dealing with construction of improvements which contains special terms for notice and correction of defaults), LESSEE shall promptly so notify LESSOR in writing. If LESSOR shall fail to cure such default within twenty days after receipt of such notice, or if the default is of such character as to require more than twenty days to cure and LESSOR shall fail to commence to do so within twenty days after receipt of such notice and thereafter diligently proceed to cure such default, then, in either event, LESSEE may cure such default and such expense shall be deducted from the rent otherwise due or cancel and terminate this lease.

**20. RIGHT OF FIRST REFUSAL.** If during the term of this lease, or any extension thereof, LESSOR shall receive a bona fide offer to purchase the demised premises, which offer is acceptable to LESSOR, LESSOR agrees that LESSEE shall have and is hereby granted an option to purchase the demised premises upon the same terms and provisions. LESSOR agrees immediately after receipt of such offer to give LESSEE notice in writing of the terms and provisions thereof, and that LESSEE may exercise its option to purchase said property at any time within twenty days after such notice is received by LESSEE. If LESSEE shall elect to exercise such option it shall do so by giving notice in writing to LESSOR within such twenty-day period and a contract of sale shall be executed by the parties and title closed within a reasonable time thereafter. The failure of LESSEE to exercise the option provided in this article shall in no way relieve or release LESSOR from the terms and effect of the option granted in Article 21.

**21. OPTION TO PURCHASE.** LESSOR agrees that LESSEE shall have and is hereby granted an option to purchase the leased premises at the expiration of the term of this lease, or any extension thereof for _____ Dollars ($ _____ ). LESSEE may exercise this option to purchase at any time within twenty days prior to the date of expiration by giving written notice to LESSOR and a contract of sale shall be executed by the parties and title closed within a reasonable time thereafter. Should such reasonable time extend beyond said expiration, this lease and all of its terms and conditions shall automatically be extended until closing. Rent is to be apportioned to date of closing.

**22. COMMON AREAS.** LESSOR shall be responsible for cleaning and lighting the parking and other common areas of the shopping center designated on Schedule B, but LESSEE shall bear a part of the cost of such cleaning and lighting in proportion to the number of square feet of floor space of the building leased by LESSEE as compared with the total number of square feet of floor space of all the buildings in the shopping center. That part of the common areas which primarily serves the customers of the building leased to LESSEE shall be lighted at night during LESSEE's business hours. Upon the written request of LESSEE LESSOR shall award a contract for cleaning the common areas to the lowest of three bidders, one of such may be LESSEE. Lessee's maximum cost shall not exceed $25.00 per month.

Excepting one liquor store & one tavern selling prepared food.

**23. CO-TENANCY.** LESSOR agrees that no building in the shopping center shall be occupied by a tenant selling food or alcoholic beverages for consumption on the premises without the prior written consent of LESSEE. Also included are pizza outlets, sandwich shops, beauty shops and barber shops.

**24. EXCLUSIVE.** LESSOR agrees that no occupant of any building in the shopping center other than the herein leased building shall be allowed to sell packaged fluid milk, packaged bread products, or delicatessen type food products for consumption off the premises, except a grocery store occupying a building containing more than 10,000 square feet of floor space.

**25. LESSOR'S COVENANTS.** LESSOR covenants that he has good and marketable title to the demised premises in fee simple absolute and that the same is subject to no leases, tenancies, agreements, encumbrances, liens, restrictions or defects in title affecting the demised premises or the rights granted LESSEE in this lease; that there are no restrictive covenants, zoning or other ordinances or regulations applicable to the demised premises which will prevent LESSEE from conducting its usual business and that in the event the demised premises are in an area where the sale of beer for off-premises consumption is permitted by law, there are no restrictive covenants applicable to the demised premises which will prevent LESSEE from selling beer for off-premises consumption.

**26. QUIET ENJOYMENT.** LESSEE upon paying the rent and performing the covenants of

agreements of this lease shall quietly have, hold and enjoy the demised premises and all rights granted LESSEE in this lease during the term thereof and extensions thereto, if any.

**27. SUBORDINATION.** LESSEE hereby agrees that its leasehold interest hereunder is subordinate to any mortgages now on, or hereafter to be placed on, the premises leased hereunder; provided, as a condition precedent to such subordination, each such mortgage shall expressly covenant or each such mortgage shall expressly provide that so long as the LESSEE is not in default under said Lease Agreement, the LESSEE'S quiet possession of the portion of the premises leased hereunder shall remain undisturbed, on the terms and conditions stated herein, whether or not the mortgage is in default and notwithstanding any foreclosure or other action brought by the holder of the mortgage in connection therewith.

This Subordination Agreement shall be self operative and no further instrument or certificate of subordination shall be required from LESSEE.

**28. NOTICES.** Any notices required or permitted hereunder shall be in writing and delivered either in person to the other party or the other party's authorized agent, or by United States Certified Mail, Return Receipt Requested, postage fully prepaid, to the addresses set forth hereinafter, or to such other address as either party may designate in writing and deliver as herein provided.

LESSOR:   W.S.R. Investments
          2502 Silverside Road, Suite B
          Wilmington, DE 19803

LESSEE:   THE SOUTHLAND CORPORATION
          Attn: Director of Property
          2828 North Haskell Avenue
          Dallas, Texas 75204

**29. RECORDING.** This lease agreement shall not be filed for public record by any party hereto, but when the construction of the building and other improvements is completed as herein provided LESSOR and LESSEE shall execute and acknowledge a memorandum or short form lease setting forth the parties, description of the leased premises, term of the lease, options for extension of the term, if any, and any other provision hereof, the inclusion of which shall be mutually agreed upon by LESSOR and LESSEE, which memorandum or short form lease may be filed for public record by any party hereto. However, at the option of either party, a short form or memorandum of lease may be filed by either party at any time after the execution of this lease agreement.

**30. COMPLETE AGREEMENT.** This lease contains a complete expression of the agreement between the parties and there are no promises, representations or inducements except such as are herein provided.

        Added Addendum containing Articles 31 through 34 is
        hereby incorporated into and made a part of this
        lease.

This lease agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

EXECUTED BY LESSOR this _____ day of _____, 19____.

                              LESSOR _____ (Seal)


EXECUTED BY LESSEE this _____ day of _____, 19____.

ATTEST                                THE SOUTHLAND CORPORATION

_____               _____ (Seal)
Assistant Secretary                   Vice President

                        Page 4

ADDEND[...]

As Addendum to this Lease a part of [...] referred to as Lessor, and [...] to as Lessee.

Lessor agrees to put the final approved plans as [...] for Lessee's leasehold improvements out to bid [...] [...] approved by Lessee. If the lowest of such [...] bids is more or less than $70,000, the monthly minimum rent herein shall be increased or decreased by an amount equal [...] percent (1%) of such difference, or, at its option, the Lessee may pay any excess amount in cash within 30 days after completion of the improvements in lieu of adjusting the minimum monthly rent. If the lowest of such bids exceeds $70,000, Lessor may, at its option, cancel this lease within 20 days after receiving written notification of such bid.

The items to be included in such bids are as follows:

a. Construction cost of the building from the "ground up" complete with electrical service, plumbing and sanitary mains to be stubbed out 5' from the building perimeter all as shown on Lessee's typical drawings and specifications described in paragraph 3 of this lease.

b. Additional cost to extend and connect sewers, water, gas, and electrical mains from item a. to service locations not to exceed 35' from the leased property lines. (Not including city front-footage connection fees in excess of $1.00 per front foot or liens against the property for city-installed mains, should either exist.)

c. Cost of grading and paving parking lot within Lessee's leased area and to Lessee's specifications adequate to insure natural drainage from site.

d. Construction of concrete apron as described in Paragraph 31.



# PROPERTY DESCRIPTION

Attached to and made a part of Lease dated ___Oct. 14 1976___
between W S H Investments, referred to as Lessor, and The
Southland Corporation, referred to as Lessee.

Leased premises are a part of the below described property
and further depicted on attached Schedule B:

    Said property beginning at a point on the Southwesterly
side of Delaware Route 896, said point being a common corner
for lands herein being described and the entrance road to the
Four Seasons development; thence from said point of beginning
along said Delaware Route 896, S2 17 44 W 148.389' to a point;
thence proceeding N 85 23 30 W  274.999' to a point thence
proceeding N 2 17 44 E 137.289' to a point; thence proceeding
S 87 42 16 E  274.789' to the point of beginning.

    Said lessee's property is shown and further described on
plot plan drawing #2, dated 8/2/76, attached hereto and entitled
Schedule B, as Proposed Retail Store, 2400 square feet, #1, and
is outlined in red.  Common use areas are outlined in green.

exclusive right to use the 5 parking spaces
immediately North of said store, all as



SCHEDULE A

AMENDMENT NO. __one (1)__
STORE NO. __1126-18494__

On the __14th__ day of __October__ , 19 __76__, W.S.H. Investments

__2502 Silverside Rd., Suite 8, Wilmington, Delaware   19803__

as LESSOR, and The Southland Corporation as LESSEE, entered into a lease agreement

covering the premises commonly known as __Store #1, 4 Seasons Center, Rt. 896,__

__New Castle County, Dela.__ and more fully described in Schedule A, which Schedule is

attached hereto and made a part hereof.

LESSOR and LESSEE presently desire to amend said lease agreement.

Now therefore, in consideration of the premises and $10 in hand paid each to

the other, receipt of which is hereby acknowledged, said lease agreement shall be

and is hereby amended as follows:

1. Article 3, Line 26, change date to read:  "July 1, 1977" and change date in
   line 33 to read: "July 31, 1977".

2. Article 5, Rent, is amended to read:

   "Twelve hundred and fifty one dollars and 59/100 ($1,251.59)" due to
   lowest bid being $70,159.00.

In all other respects said lease agreement is hereby ratified and reaffirmed.

Executed this _____ day of _____, 19 __77__

ATTEST:                                      LESSEE
                                             THE SOUTHLAND CORPORATION

By _____                 By _____
   Assistant Secretary                          Vice President


_____                    LESSOR

                                             _____

PROPERTY DESCRIPTION

Attached to and made a part of Lease dated _____Oct. 14 1976_____
between W S H Investments, referred to as Lessor, and The
Southland Corporation, referred to as Lessee.


Leased premises are a part of the below described property
and further depicted on attached Schedule B:


   Said property beginning at a point on the Southwesterly
side of Delaware Route 896, said point being a common corner
for lands herein being described and the entrance road to the
Four Seasons development; thence from said point of beginning
along said Delaware Route 896, S2 17 44 W 148.339' to a point;
thence proceeding N 85 23 30 W  274.999' to a point thence
proceeding N 2 17 44 E 137.289' to a point; thence proceeding
S 87 42 16 E  274.789' to the point of beginning.


   Said lessee's property is shown and further described on
plot plan drawing #2, dated 8/2/76, being hereto and entitled
Schedule B, as Proposed Retail Store, 2400 square feet, #1 and
is outlined in red.  Common use areas are outlined in green.

exclusive right to use the 5 parking spaces
immediately North of said store, all ar 

SCHEDULE A

STORE NO. 1176-18494

On the __14th__ day of __October__ , 19 76 , W.S.H. Investments

2502 Silverside Rd., Suite 8, Wilmington, Delaware 19803

as LESSOR, and The Southland Corporation as LESSEE, entered into a lease agreement covering the premises commonly known as __Store #1, 4 Seasons Center, Rt. 896,__

__New Castle County, Dela,__ and more fully described in Schedule A, which Schedule is attached hereto and made a part hereof.

LESSOR and LESSEE presently desire to amend said lease agreement.

Now therefore, in consideration of the premises and $10 in hand paid each to the other, receipt of which is hereby acknowledged, said lease agreement shall be and is hereby amended as follows:

1. Article 3, Line 26, change date to read: "July 1, 1977" and change date in line 33 to read: "July 31, 1977".

2. Article 5, Rent, is amended to read:

   "Twelve hundred and fifty one dollars and 59/100 ($1,251.59)" due to lowest bid being $70,159.00.

In all other respects said lease agreement is hereby ratified and reaffirmed.

Executed this _____ day of _____ , 19 77 .

ATTEST:

By _____
Assistant Secretary

LESSEE
THE SOUTHLAND CORPORATION

By _____
Vice President

LESSOR

SCHEDULE A

PROPERTY DESCRIPTION

Attached to and made a part of Lease dated ___*Oct. 14, 1976*___
between W S H Investments, referred to as Lessor, and The
Southland Corporation, referred to as Lessee.


Leased premises are a part of the below described property
and further depicted on attached Schedule B:


    Said property beginning at a point on the Southwesterly
side of Delaware Route 896, said point being a common corner
for lands herein being described and the entrance road to the
Four Seasons development; thence from said point of beginning
along said Delaware Route 896, S2 17 44 W 148.389' to a point;
thence proceeding N 85 23 30 W  274.999' to a point thence
proceeding N 2 17 44 E 137.289' to a point; thence proceeding
S 87 42 16 E  274.789' to the point of beginning.


    Said lessee's property is shown and further described on
plot plan drawing #2, dated 8/2/76, attached hereto and entitled
Schedule B, as Proposed Retail Store, 2400 square feet, #1, and
is outlined in red.  Common use areas are outlined in green.



        exclusive right to use the 5 parking spaces
        immediately North of said store, all as


SCHEDULE A

7-ELEVEN FOOD STORES • DIVISION 1149 • 2711 EASTON ROAD • WILLOW GROVE, PA. 19090 • PHONE (215) 672-5711

March 21, 1977

Mr. Carl G. Wittig
W.S.H. Investments
2502 Silverside Road, Suite 8
Wilmington, Delaware  19803

RE:  Lease Amendment No. 1, Location 1126-18494

Dear Jim:

     Enclosed please find fully executed lease amendment changing construction dates and increasing rent for your file.  I am pleased that you have commenced construction and hope you can complete prior to agreed dates.

Sincerely,

Lowell A. Pyke
Real Estate Manager

dl

Enclosure

cc:  Division Manager
     Zone Manager
     1149 RE
     1129 RE

AMENDMENT NO.  one (1)
STORE NO.  1176-18494

On the __14th__ day of __October__ , 19__76__ , W.S.H. Investments

__2502 Silverside Rd., Suite 8, Wilmington, Delaware   19803__

as LESSOR, and The Southland Corporation as LESSEE, entered into a lease agreement

covering the premises commonly known as __Store #1, 4 Seasons Center, Rt. 896,__

__New Castle County, Dela.__ and more fully described in Schedule A, which Schedule is

attached hereto and made a part hereof.

LESSOR and LESSEE presently desire to amend said lease agreement.

Now therefore, in consideration of the premises and $10 in hand paid each to

the other, receipt of which is hereby acknowledged, said lease agreement shall be

and is hereby amended as follows:

1.  Article 3, Line 26, change date to read:  "July 1, 1977" and change date in
    line 33 to read:  "July 31, 1977".

2.  Article 5, Rent, is amended to read:

    "Twelve hundred and fifty one dollars and 59/100 ($1,251.59)" due to
    lowest bid being $70,159.00.




In all other respects said lease agreement is hereby ratified and reaffirmed.

Executed this _____ day of __February__ , 19__77__ .

ATTEST:                                      LESSEE
                                             THE SOUTHLAND CORPORATION

By _____                   By _____
   Assistant Secretary                          Vice President


                                             LESSOR


_____                      _____

EXHIBIT "D"

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBYN E. ZAVODNICK | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  05-CV-660 |
| | : | |
| KAILASH SAYL and 7-ELEVEN, INC. | : | |
| and | : | JURY TRIAL DEMANDED |
| MARTUSCELLI INVESTMENT | : | |
| ASSOCIATES | : | |

---

**AMENDED ANSWER OF DEFENDANTS KAILASH SAYL AND 7-ELEVEN,
INC. TO  COMPLAINT OF PLAINTIFF
AND AMENDED CROSS-CLAIM DIRECTED TO DEFENDANT
MARTUSCELLI INVESTMENT ASSOCIATES**

Defendants Kailash Sayl and 7-Eleven, Inc., by and through their attorneys Rawle & Henderson, LLP hereby answer plaintiff's Complaint and assert affirmative defenses and cross claims as follows:

1.    Defendants lack sufficient knowledge to either admit or deny the averments made herein, and, accordingly, strict proof thereof is demanded at trial.

2.    Denied.  Defendant Kailash Sayl is a citizen and resident of the State of Maryland.

3.    Admitted.

4.    Neither admitted nor denied.  The averments contained in plaintiff's Complaint are directed at third party defendant, Martuscelli Investment Associates ("Martuscelli"), and therefore, no response is required.  Without waiving the foregoing, answering defendants lack sufficient knowledge to either admit or deny the averments made in this paragraph, and, accordingly, strict proof thereof is demanded at trial.

5.    Defendants lack sufficient knowledge to either admit or deny the

averments made herein, and, accordingly, strict proof thereof is demanded at trial.

     6.    Denied. The averments contained herein constitute conclusions of law to which no response is required. Additionally, it is specifically denied that venue is proper in the United States District Court for the Eastern District of Pennsylvania.

     7.    Denied. The averments contained herein constitute conclusions of law to which no response is required. To the extent that a response is required, defendants deny the averments.

     8.    Denied. The averments contained herein constitute conclusions of law to which no response is required. Additionally, defendants lack sufficient knowledge to either admit or deny the averments made herein, and, accordingly, strict proof thereof is demanded. To the extent that a response is required, defendants deny the averments.

     9.    Neither admitted nor denied. The averments contained in plaintiff's Complaint are directed at third party defendant, Martuscelli, and therefore, no response is required. Without waiving the foregoing, answering defendants lack sufficient knowledge to either admit or deny the averments made in plaintiff's Complaint, and, accordingly, strict proof thereof is demanded at trial.

     10.    Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state conclusions of law which are deemed denied. By way of further answer, but not in derogation of the foregoing, it is denied that defendant 7-Eleven, Inc. owned, operated, controlled and maintained the building/property/convenience store including the parking lot adjacent thereto located at 100 Four Seasons Parkway, in the State of Delaware.

     11.    Denied. Under the Federal Rules of Civil Procedure, no answer is

required to this paragraph as the averments therein state conclusions of law which are deemed denied. By way of further answer, but not in derogation of the foregoing, it is denied that defendant Sayl owned, operated, controlled and maintained the parking lot adjacent to a convenient store located at 100 Four Seasons Parkway, in the State of Delaware. By way of further answer, but not in derogation of the foregoing, it is admitted that defendant Sayl was a franchisee of a convenience store located at 100 Four Seasons Parkway, in the State of Delaware, and was responsible for maintaining the interior of the store in accordance with the franchise agreement.

12.    Neither admitted nor denied. The averments contained in plaintiff's Complaint are directed at third party defendant, Martuscelli, and therefore, no response is required. Without waiving the foregoing, answering defendants lack sufficient knowledge to either admit or deny the averments made in plaintiff's Complaint, and, accordingly, strict proof thereof is demanded at trial.

13.    Denied. Defendants lack sufficient knowledge to either admit or deny the averments made herein, and, accordingly, strict proof thereof is demanded at trial.

14.    Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state conclusions of law which are deemed denied. Additionally, defendants lack sufficient knowledge to either admit or deny the averments made herein, and, accordingly, strict proof thereof is demanded at trial.

15.    (a) through (r), inclusive. Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state conclusions of law which are deemed denied.

16.    Denied.  Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state conclusions of law which are deemed denied.

17.    Denied.  Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state conclusions of law which are deemed denied.  By way of further answer, but not in derogation of the foregoing, answering defendants deny that the premises in question were maintained by answering defendants or their respective agents, servants and/or employees who were then and there acting in the course and scope of their employment with and under the direct control of the answering defendants at any time material hereto.

18.    Denied.  Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state, in part, conclusions of law which are deemed denied.  Additionally, answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph and they are, accordingly, denied and strict proof thereof is demanded.  By way of further answer, but not in derogation of the foregoing, answering defendants deny that the any act or omission to act on their part caused plaintiff's alleged injuries and/or alleged damages.

19.    Denied.  Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state, in part, conclusions of law which are deemed denied.  Additionally, answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph and they are, accordingly, denied and strict proof thereof is demanded.  By

way of further answer, but not in derogation of the foregoing, answering defendants deny that the any act or omission to act on their part caused plaintiff's alleged injuries and/or alleged damages.

20. Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state, in part, conclusions of law which are deemed denied. Additionally, answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph and they are, accordingly, denied and strict proof thereof is demanded. By way of further answer, but not in derogation of the foregoing, answering defendants deny that the any act or omission to act on their part caused plaintiff's alleged injuries and/or alleged damages. By way of further answer, but not in derogation of the foregoing, answering defendants deny that they were negligent in any respect.

21. Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state, in part, conclusions of law which are deemed denied. Additionally, answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph and they are, accordingly, denied and strict proof thereof is demanded. By way of further answer, but not in derogation of the foregoing, answering defendants deny that the any act or omission to act on their part caused plaintiff's alleged injuries and/or alleged damages.

22. Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state, in part, conclusions of law which are deemed denied. Additionally, answering defendants are without knowledge or

information sufficient to form a belief as to the truth of the remaining averments in this paragraph and they are, accordingly, denied and strict proof thereof is demanded. By way of further answer, but not in derogation of the foregoing, answering defendants deny that the any act or omission to act on their part caused plaintiff's alleged injuries and/or alleged damages. By way of further answer, but not in derogation of the foregoing, answering defendants deny that they were negligent in any respect.

23.     Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state, in part, conclusions of law which are deemed denied. Additionally, answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph and they are, accordingly, denied and strict proof thereof is demanded. By way of further answer, but not in derogation of the foregoing, answering defendants deny that the any act or omission to act on their part caused plaintiff's alleged injuries and/or alleged damages.

24.     Denied. Under the Federal Rules of Civil Procedure, no answer is required to this paragraph as the averments therein state, in part, conclusions of law which are deemed denied. Additionally, answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph and they are, accordingly, denied and strict proof thereof is demanded. By way of further answer, but not in derogation of the foregoing, answering defendants deny that the any act or omission to act on their part caused plaintiff's alleged injuries and/or alleged damages. By way of further answer, but not in derogation of the foregoing, answering defendants deny that they were negligent in any respect.

WHEREFORE, Defendants 7-Eleven, Inc. and Kailash Sayl respectfully request that judgment be entered in its favor and against Plaintiff Robyn Zavodnick on all claims, and costs and attorney's fees be awarded in favor of Defendants.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

25.    Plaintiff has filed this action in the improper venue.

### SECOND AFFIRMATIVE DEFENSE

26.    If plaintiff was injured as she alleges, said injuries were not due to the acts and/or omissions of answering defendants.

### THIRD AFFIRMATIVE DEFENSE

27.    Answering defendants owed no duty to plaintiff.

### FOURTH AFFIRMATIVE DEFENSE

28.    Plaintiff assumed the risk of injury and therefore her claims should be denied.

### FIFTH AFFIRMATIVE DEFENSE

29.    Plaintiffs' Complaint fails to state a cause of action and fails to state a claim upon which relief can be granted against defendants.

### SIXTH AFFIRMATIVE DEFENSE

30.    Plaintiff's claims are barred as her alleged injuries were or may have been caused by negligent acts or omissions of plaintiff, which caused or contributed to the alleged injuries and resulting damages and/or loss, if any.

## SEVENTH AFFIRMATIVE DEFENSE

31.     Plaintiff's claims are barred in whole or in part by the doctrine of contributory negligence and/or comparative negligence, in that plaintiff's negligence caused or contributed to the alleged injuries and damages.

## EIGHTH AFFIRMATIVE DEFENSE

32.     Plaintiff's claims are barred as her alleged injuries were or may have been caused by the acts of others for whom defendants are not responsible, and the negligent acts or omissions of individuals and/or entities other than defendants may have caused or contributed to the alleged injuries and the resulting damages and/or loss, if any.

## NINTH AFFIRMATIVE DEFENSE

33.     The negligent acts and/or omissions of individuals and/or entities other than defendants may constitute intervening superseding acts of negligence, which caused plaintiff's injuries and damages.

## TENTH AFFIRMATIVE DEFENSE

34.     Defendants are not subject to personal jurisdiction in Pennsylvania.


WHEREFORE, Defendants 7-Eleven, Inc. and Kailash Sayl respectfully request that judgment be entered in their favor and against Plaintiff Robyn Zavodnick on all claims, and costs and attorney's fees be awarded in favor of Defendants.

**AMENDED CROSSCLAIM PURSUANT TO F.R.C.P. 13
DIRECTED TO DEFENDANT MARTUSCELLI INVESTMENT
ASSOCIATES**

35.    Answering defendants 7-Eleven, Inc. and Kailash Sayl, while denying any and all allegations in plaintiff's Complaint, nevertheless assert that if they are found liable to plaintiff, answering defendants' negligence or other liability-producing conduct, if any, was passive, secondary and unrelated and that the negligence or other liability-producing conduct of defendant Martuscelli Investment Associates was active, primary and proximate.

36.    Answering defendants deny that they are liable to plaintiff for any sum or sums whatsoever; however, if such liability should be found at the time of trial and all such liability hereby is again specifically denied, then, as alleged in plaintiff's Complaint and according to the facts set forth therein, defendant Martuscelli Investment Associates is alone liable to plaintiff, jointly and/or severally liable with answering defendants 7-Eleven Inc. and Kailash Sayl and/or liable over to answering defendants 7-Eleven, Inc. and Kailash Sayl under the principals of contribution and/or indemnity for any sum or sums adjudged due to plaintiff, or paid to plaintiff, by answering defendants by way of judgment, verdict or settlement, including an award of costs and fees.

37.    Plaintiff asserts that she tripped and fell as a result of an alleged defect in the parking lot located at 100 Four Seasons Parkway, Newark, Delaware.

38.    Defendant, 7-Eleven, Inc. leases a portion of the premises located at 100 Four Seasons Parkway, Newark, Delaware from Defendant Martuscelli Investment Associates pursuant to the terms of a lease contract with Martuscelli Investment

Associates.  A true and correct copy of the lease contract is attached hereto as Exhibit "A."

39.     Defendant, 7-Eleven, Inc., in turn, subleases that portion of 100 Four Seasons Parkway, Newark, Delaware to defendant Kailash Sayl pursuant to the terms of a franchise agreement.

40.     Pursuant to the terms of the lease contract between 7-Eleven, Inc. and Martuscelli Investment Associates, Martuscelli Investment Associates was responsible for the maintenance and repair of the parking lot area where this incident occurred at all times material hereto.  In particular, the lease agreement between 7-Eleven, Inc. and Martuscelli Investment Associates states that "lessor [Martuscelli] agrees to maintain in good repair the outside walls, roof, and floor of the building and surface of the parking areas, sidewalks and driveways … ."  See Exhibit "A," Lease Contract, Paragraph No. 9. Further, the lease contract between 7-Eleven, Inc. and Martuscelli Investment Associates states that "lessor shall be responsible for cleaning and lighting the parking and other common areas of the shopping center … ."  See Exhibit "A," Lease Contract, Paragraph No. 22.

41.     The lease contract between 7-Eleven, Inc. and Martuscelli Investment Associates further provides that should a suit be brought to enforce any covenant of the lease contract or for the breach of any covenant of a lease contract for a condition contained in the contract, the losing party in such suit shall pay the prevailing party a reasonable attorneys fee.  See Exhibit "A," Lease Contract, Paragraph No. 18.

42.     In accordance with the provisions of the lease contract, defendant Martuscelli Investment Associates is and was obligated to maintain and repair the parking lot area at issue.

43.     If plaintiff is entitled to a recovery in this matter, it is because of the negligence and carelessness of defendant Martuscelli Investment Associates to properly maintain and repair the alleged defective parking lot pursuant to its obligations in the lease contract and therefore, defendant Martuscelli Investment Associates is alone liable for any injuries and damages allegedly sustained by plaintiff.

44.     Because of the negligence and carelessness of defendant Martuscelli Investment Associates, defendant Martuscelli Investment Associates is liable to defendants 7-Eleven, Inc. and Kailash Sayl for contribution and/or indemnity on all claims and causes of action made by the plaintiff.

45.     Further, defendant Martuscelli Investment Associates breached the terms of the lease contract by failing to properly maintain the parking lot at issue.

46.     Because of the breach of the contract by Martuscelli Investment Associates, defendants Kailash Sayl and 7-Eleven, Inc. have incurred damages in the form of costs and fees and may incur other damages in the future.

47.     Defendants Kailash Sayl and 7-Eleven, Inc. are entitled to all damages they have incurred as a result of this incident and civil action, which was caused by the breach of contract by defendant Martuscelli Investment Associates.

48.     Defendants Kailash Sayl and 7-Eleven, Inc. are entitled to all damages (including but not limited to fees, costs, payments, and incidental and/or consequential

damages) caused by the breach of contract of defendant Martuscelli Investment Associates.

WHEREFORE, defendant Martuscelli Investment Associates is alone liable to the plaintiff, is liable with defendants Kailash Sayl and 7-Eleven, Inc., or is liable over to defendants Kailash Sayl and 7-Eleven, Inc. for damages and/or contribution and/or indemnity, plus attorneys fees and costs, and liability, whatsoever on the part of defendants Kailash Sayl and 7-Eleven, Inc. is specifically denied.

RAWLE & HENDERSON, LLP

By: _____
          Delia Clark
          300 Delaware Avenue, Suite 1015
          Wilmington, DE 19801
          (302) 778-1200
          Attorneys for Defendants,
          Kailash Sayl and 7-Eleven, Inc.

Date: